James RYAN, Plaintiff-Appellant,

v.

MFA MUTUAL INSURANCE COMPANY, Defendant-Appellee.

Court of Appeals of Tennessee, Middle Section.

April 25, 1980.

Certiorari Denied by Supreme Court June 23, 1980.

Clyde W. Richert, III, Springfield, for plaintiff-appellant.

John M. Baird and William H. Crawford, Jr., Nashville, for defendant-appellee.

OPINION

DROWOTA, Judge.

The sole issue in this appeal from the granting of a motion to dismiss is whether an innocent co-insured can collect on a joint insurance policy where the other co-insured destroyed the insured property, and where the innocent co-insured's interest in the property is severable from that of the other co-insured. In this case, appellant James Ryan's wife set fire to their house, and Ryan sought a recovery from appellee MFA Mutual Insurance Company for the value of certain destroyed contents of the house which he claimed belonged to him. A copy of Ryan's policy with the relevant provisions underlined is attached to this opinion as an appendix.

Appellant filed his complaint on July 21, 1979, in the Robertson County Circuit Court, alleging that he and his wife Betty were insured for fire loss to their residence in the amount of $20,000.00 and for loss and damage to the contents of their house in the amount of $10,000.00 under a policy of insurance issued by appellee MFA Mutual Insurance Company; that on June 5, 1978, his wife set fire to their house after he and she had had an argument and after he had left the house for a short visit to a relative's home; that he was innocent of any participation in or encouragement of his wife's act; that he, being an insured under the aforementioned insurance policy, was a proper party to recover under the policy; that the great majority of items listed in the proof of loss he submitted to appellee were purchased either by him directly or with income derived from his employment; that appellee had denied his claim under the policy; and seeking a recovery from appellee in the amount of $8,958.15, which was the value of the estimated loss to "his contents that were in the damaged dwelling." It was also stated in the complaint that the loss payee on the policy for any structure

loss was the Investors Savings & Loan Association of Springfield, Tennessee, the first mortgagee on the real property and house. It is unclear whether the mortgagee has been paid under the policy for fire loss to the house; in any event, as has been indicated, appellant's claim is only for coverage under that portion of the policy pertaining to contents and not for coverage of the house itself.

Appellee on September 11, 1979, filed a motion to dismiss appellant's complaint, alleging, *inter alia*, that the complaint failed to state a cause of action upon which relief could be granted.

Oral argument was heard on appellee's motion on September 26, 1979, and on October 26, 1979, the trial court issued a memorandum opinion in which it found that under the facts which had been "practically agreed to" (meaning, presumably, the facts as alleged in the complaint), this case was "on all fours" with those of a Wisconsin case, *Klemens v. Badger Mutual Insurance Company*, 8 Wis.2d 565, 99 N.W.2d 865 (1959), which case was "representative of the majority rule in the United States" (under which rule recovery is denied in cases such as this); and sustained appellee's motion to dismiss. An order incorporating this memorandum opinion by reference and dismissing this case was entered on November 1, 1979. An appeal from this order was perfected by appellant.

Appellant urges that we reverse the decision of the trial court and remand this case for a trial on the merits of the case, both on the issue of his own innocence as to the burning of the house, "if [appellee] wishes to raise this point," and on the question of damages.

This being a case of first impression in this state, appellant bases his arguments on a line of cases from other jurisdictions which hold generally that an innocent co-insured in a case such as this may recover when insured property is destroyed by another co-insured. Appellant insists that the authorities he presents represent a "better reasoned" approach to the issue at hand than do the cases cited by appellee, which

cases appellee alleges represent the dominant line of authority in the United States.

It is true that until recently the cases upon which appellee bases its argument did represent the majority rule in the United States. As we shall hereinafter illustrate, this old majority rule has been supplanted by a new majority of jurisdictions which would allow recovery in a case such as this. However, in the interest of showing how and on what grounds this supplanting has occurred, we shall begin our discussion of the relevant law in this case with an examination of those authorities which would arguably deny recovery in this case.

### THE "OLD" DOMINANT RULE

Appellee has cited for us cases representing this "old" "dominant line of authority" from Alabama, Louisiana, Massachusetts, Michigan, Texas, Vermont, Virginia, and Wisconsin. *See Home Insurance Company v. Pugh*, 51 Ala.App. 373, 286 So.2d 49, 50 (1973); *Fuselier v. United States Fidelity and Guaranty Company*, 301 So.2d 681, 682 (La.App.1974); *Kosior v. Continental Insurance Company*, 299 Mass. 601, 13 N.E.2d 423, 424 (1938); *Ijames v. Republic Insurance Company*, 33 Mich.App. 541, 190 N.W.2d 366, 369 (1971); *Bridges v. Commercial Standard Insurance Company*, 252 S.W.2d 511, 512 (Tex.Civ.App.1952); *Cooperative Fire Insurance Association of Vermont v. Domina*, 399 A.2d 502, 503 (Vt. 1979); *Rockingham Mutual Insurance Company v. Hummel*, 219 Va. 803, 250 S.E.2d 774, 776 (1979); *Klemens v. Badger Mutual Insurance Company of Milwaukee*, 8 Wis.2d 565, 99 N.W.2d 865, 866 (1959).

In *Klemens*, the case cited by the trial court in its memorandum opinion, the husband of a couple who were jointly insured against fire loss to their house set fire to the house. The wife sought a recovery against the insurance company for the loss. The policy contained provisions stating that the insurer was not liable for loss caused by neglect of the insured to save and preserve the property at and after a loss, and that the policy should be void in any case of fraud by the insured, provisions similar to

ones in the policy in this case. The Supreme Court of Wisconsin essentially held that since the insurance policy was written in the joint names of Mr. and Mrs. Klemens, they had a joint obligation to comply with the terms of the policy, i. e. to save and preserve the property; that the breach of this obligation by Mr. Klemens in intentionally burning the house was thus chargeable to Mrs. Klemens; and that she therefore could not recover under the policy. We note that the Supreme Court in reaching its decision cited a rule taken from 45 C.J.S. Insurance § 822, according to which "where ... property is jointly owned, or where there is a joint obligation on the part of the owners to save and preserve the property, an innocent owner cannot recover on the policy where a coowner willfully set the property on fire." The court also specifically concurred in the trial court's decision which was based in part on Mrs. Klemen's "position as a joint owner of property." *Klemens, supra,* 99 N.W.2d at 867.

In *Kosior, supra,* a woman whose husband had intentionally burned buildings owned by the couple as tenants in common conceded that, at law, her husband's act rendered the fire insurance policy in both their names void, but asked for recovery for the value of her interest in the property under the equity powers of the court. The Supreme Judicial Court of Massachusetts denied her claim, basing its decision on the finding that the policy was joint and that the "act of her husband in burning the insured buildings was an act of the 'insured,' and as such it was fraud upon the [insurer] which rendered the policies void in accordance with their terms." *Kosior, supra,* 13 N.E.2d at 425.

In *Bridges, supra,* a man who had a fire insurance policy on a house which was intentionally burned by his wife was denied recovery on the policy. The Court of Civil Appeals of Texas held that "where two persons have a joint interest in property which is destroyed by being intentionally burned by one of them, the other, though innocent, cannot recover on a fire insurance policy," and specifically included in the holding both the homestead and household goods which in Texas were considered community property of the couple. *Bridges, supra* at 512.

In the *Domina* case, the husband of the couple who had insured their property against loss by fire burned the property and later plead guilty to second degree arson in connection with the burning. The insurance company denied coverage. Husband and wife sued the company, claiming that the innocent wife at least should be permitted to recover to the extent of her interest in the property. The Supreme Court of Vermont considered and refused to follow the New Jersey case of *Howell v. Ohio Casualty Insurance Co.,* 130 N.J.Super. 350, 327 A.2d 240 (1974), which had held that "fraud or misconduct of one insured should not bar recovery by innocent co-insureds to the extent of their respective interests in the property involved." *Howell, supra,* 327 A.2d at 243, quoted in *Domina, supra* at 503. The court stated that even assuming that the misconduct of the husband would not bar recovery of the innocent wife, "nevertheless her interest in the property as tenants by the entirety is such that the extent thereof cannot be determined," and then held that the wife "cannot be permitted to make a burning, fraudulently done by her co-insured husband, the basis of recovery in this action of the total proceeds of the policy," and "further, permitting a recovery by the wife of one-half the proceeds of the policy, as suggested by the appellees, would be to substitute another contract in place of the one made to protect the indivisible ownership by the entireties." *Domina, supra* at 503.

In *Rockingham, supra,* a husband intentionally burned a dwelling jointly owned and insured by both husband and wife and the innocent wife claimed entitlement to a share of the insurance proceeds. The policy contained provisions regarding the fraud or neglect of the insured similar to those in the policy in the *Klemens* case and to the policy herein at issue. The Supreme Court of Virginia cited the *Klemens* case, held against the wife, stating that "in this case, the legal interest in the subject matter of

the policy was joint and not severable," being owned in tenancy by the entirety, and "furthermore, the form of the insurance contract was joint; the 'Named Insured' was [husband and wife] . . . if either spouse breached [the duty to save and preserve the property or the duty not to defraud the insurer], the breach was chargeable to the 'Named Insured' preventing either spouse from recovering any amount under the policy." *Rockingham, supra,* 250 S.E.2d at 776.

It is apparent that the *Klemens* case from Wisconsin, *Kosior* from Massachusetts, *Bridges* from Texas, *Domina* from Vermont, and *Rockingham* from Virginia all hold in essence that an innocent co-insured may not recover on a fire insurance policy where another co-insured has intentionally set fire to the insured property. In all but the *Kosior* case, the fact that the couples jointly owned the insured property was mentioned by the courts, and even though such facts did not constitute the sole basis for the holdings, being based also (or mainly, in some of the cases) as they were on the joint nature of the insurance "contract," we regard such consideration by the courts to be noteworthy.

In the *Fuselier* case, also cited by appellee as being in the (old) "dominant line of authority" referred to above, the Third Circuit Court of Appeal of Louisiana did not in so many words consider the issue facing us here. In *Fuselier*, the husband of a couple who had insured their house against fire loss burned the house. Both husband and wife sued the insurance company to recover under the policy. On the issue of whether the arson of the husband precluded recovery on the policy, the court noted that the insurance company maintained "that [the husband] caused the fire, and that, as a consequence *he* cannot recover," and held that even though the policy did not specifically state "that the insured may not recover if *he* burns his house," the law of Louisiana "does not allow one to profit from *his* wrongdoing," and that "arson or incendiarism has been recognized in Louisiana for many years as a defense to a claim on a fire insurance policy." (emphasis added) *Fuselier,* supra at 682. The court never referred

to the issue of whether the presumably innocent wife might recover, essentially treating her as if she did not exist or as part and parcel of her husband's identity.

In *Home Insurance Company v. Pugh, supra,* the Alabama case cited by appellee in support of its argument, the court actually held that although they agreed with the "general principle" of the *Klemens* and *Kosior* cases "as it applies in [those] cases," this general rule, that a co-insured cannot recover for destruction of insured property by another insured, *did not* apply where the latter was insane and could not therefore entertain fraudulent intent. *Pugh, supra,* 286 So.2d at 50–51.

In the more recent case of *Hosey v. Seibels Bruce Group, S. C. Ins. Co.,* 363 So.2d 751 (Ala.1978), the Alabama Supreme Court noted that Alabama had not previously directly addressed the issue, and resolved it in that case against the "general rule" referred to in *Pugh.* Noting that "some courts" have followed the rule that "an innocent coowner [may not] recover on a policy of insurance where his co-owner/co-insured has wilfully set the jointly owned and insured property on fire," the court recognized that this rule "has long been criticized as harsh and poorly reasoned." *Hosey, supra* at 754, *citing* 5 Appleman, Insurance Law and Practice (Rev.Ed. 1969), § 3594.

In *Hosey,* the Alabama court could have limited the rationale for its holding for the insured to the fact that the wife, who burned the insured property and filed a false proof of loss statement, was not a named insured, but merely a "defined insured," according to a provision in the policy which defined "insured" as the name insured's spouse and certain others, if residents of the named insured's household. (The policy at issue herein contains the same provision.) The court did not, however, so limit its holding. It did, we note, cite a Wisconsin case subsequent to *Klemens, supra,* in which the holding was so limited; the case was cited for the proposition that "where the property of an insured

is tortiously destroyed by his or her spouse, the wrongful conduct is not attributed to the insured solely by virtue of the marital relationship." *Hosey, supra* at 753 (citing *Shearer v. Dunn County Farmers Mutual Ins. Co.,* 39 Wis.2d 240, 159 N.W.2d 89 (1968).)

The court also stated that:

It has been accurately noted that:

"The ordinary person owning an undivided interest in property, not versed in the nice distinctions of insurance law, would naturally suppose that his individual interest in the property was covered by a policy which named him without qualification as one of the persons insured. ..." (citing *Hoyt v. New Hampshire Fire Ins. Co.,* 92 N.H. 242, 29 A.2d 121, 123 (1942).)

and noted that such an assumption was "even more reasonable" where, as in the case before it, the innocent insured was the only named insured. *Hosey, supra* at 754.

However, the Alabama court also cited, with approval, the New Jersey case of *Howell, supra,* which, like *Hoyt, supra,* dealt with co-insureds who were both named, quoting therefrom as follows:

... With respect to a fire insurance policy covering the interests of more than one insured ... the obligation of the carrier should be considered several as to each person insured, and the fraud or misconduct of one insured should not bar recovery by the innocent co-insureds to the extent of their respective interests in the property involved.

*Howell, supra,* 327 A.2d at 243, *cited in Hosey, supra* at 754. The court also cited the case of *Simon v. Security Ins. Co.,* 390 Mich. 72, 210 N.W.2d 322 (1973), discussed *infra,* which involved an innocent co-insured wife who was allowed to recover despite the misconduct of her (named) co-insured husband.

We note that the court in *Hosey* did specifically in its holding limit recovery "to the extent of [the innocent co-insured's] interest in the property," noting that in the case before it the insured interests of the couple were severable. *Id.* The insured property included a house which was wholly owned by the innocent husband, and personal property, some of which was owned jointly and some of which was owned by the parties separately.

The last of the cases cited by the appellee as supportive of the "dominant" rule, *Ijames, supra,* involved the issue of the fraud of a co-insured wife in making a false statement under oath regarding an item of claimed fire loss, and whether such fraud should bar any recovery at all by the husband and wife under their fire insurance policy. The Court of Appeals of Michigan held that recovery was barred, relying on an earlier Michigan case, *Monaghan v. Agricultural Fire Ins. Co.,* 53 Mich. 238, 18 N.W. 797 (1884), which, the *Ijames* court stated, stood "for the proposition that if recovery is barred as to one of the named insureds, it is barred to them all." *Ijames, supra,* 190 N.W.2d at 369.

The *Ijames* court noted that the "rule of law may be harsh and inequitable [and that it] may be in need of re-examination," but stated that such re-examination and or change in precedent was for the Michigan Supreme Court to do. *Id.*

In *Simon v. Security Ins. Co., supra,* decided in 1973, the Michigan Supreme Court considered a case of a woman claiming recovery under an insurance policy issued to her and her husband for items of hers which were stolen, possibly by her husband. The court held that such wrongful taking by her co-insured husband did not preclude her from recovering for her interest in the stolen property if she was innocent of any participation in her husband's wrongful act. Although the wife had separated from her husband and had filed for divorce, the court mainly based its holding on the fact that the wife did not participate in the wrongful taking and on the fact that her interest in the lost property was divisible from her husband's. The court noted that it was not overruling the *Monaghan* case, *supra,* but that it found only "that the conclusive presumption allegedly supported by that case [was] inapplicable to" the facts of the *Simon* case. *Simon, supra,* 210 N.W.2d at

324. The court distinguished *Monaghan* by pointing out that there, the only adult insured, who had assigned her interest and claim under a fire insurance policy to her children, was the party guilty of fraud, and that the holding there was based upon the finding that "the plaintiffs, by obtaining an assignment of Mrs. Monaghan's claim and interest in the policy, can stand in no better position than they would be had the action been brought in the names of all the joint contractors." *Id.*, citing *Monaghan, supra,* 18 N.W. at 803–804.

The court also noted the statement of the *Ijames* court that it was up to the Supreme Court to make the necessary reexamination of the precedent. *Id.*, 210 N.W.2d at 325. In making its reexamination, the (Supreme) court cited the statement from *Appleman, supra* as to "better reasoned cases" (than *Monaghan* and *Ijames*), the *Hoyt* case, *supra,* and other presumably "better reasoned cases." *Id.* The jury instructions given by the trial court which were based upon *Monaghan* were found to be "harsh, impractical, and outdated." *Id.* 210 N.W.2d at 326. The court concluded by holding that the wife there "should be afforded an opportunity to show that a loss occurred and that she had the sole or major and separable interest in the articles lost." *Id.*, 210 N.W.2d at 327.

It is apparent that, of the eight cases appellee has cited to us as being of the "dominant line of authority," only six jurisdictions would arguably still follow this "authority," namely Massachusetts, Texas, Vermont, Virginia, Wisconsin, and Louisiana. In Wisconsin the rule does not apply where the party committing the fraud was not a named insured, *see Shearer, supra,* and in four of these six states, (all except Massachusetts and Louisiana) the respective courts noted that the property insured was "jointly" owned—i. e., in the words of the *Rockingham* court, the claimants did not have "severable" interests in the respective pieces of property.

Appellee has also cited for us the case of *Cox v. Vanguard Insurance Co.,* Middle Section Court of Appeals of Tennessee, unreported opinion filed December 1, 1978, a case with facts similar to the instant case except that in *Cox,* the company had been informed by the husband who later burned the insured property that he and his wife were divorced and that he wanted the policy cancelled, but the company, who was also informed of the wife's new address, did not notify the wife of the cancellation. This Court held that the cancellation was good as to the husband but not as to the (innocent) wife, because the company "was not justified in considering that Mr. Cox had any authority to speak for his wife at a time when he was representing that she was not longer his wife," and moreover because the wife received no notice of cancellation when the company had her new, correct address; that therefore at the time of the fire the husband and wife were not co-insureds; and that the wife was "entitled to recover as the sole remaining insured after cancellation of her husband's rights, and this, despite the arson committed by her husband, her former joint insured." *Cox, supra* at 4–5.

This Court noted that if it should be in error in its reasoning, it would "otherwise follow the dominant line of authorities which would deny recovery to one of two joint insureds where the other joint insured destroyed the property." *Id.* at 5. This "dominant line" presumably included authorities, cited by the appellant insurance company in that case, from California, Alabama, Massachusetts, Pennsylvania, Texas and Wisconsin.

In the case of *Matyuf v. Phoenix Insurance Co.,* 27 Pa. D. & C.2d 351 (1933), the Washington County Court of Pennsylvania held that "when two joint owners of property (especially if they hold by entireties) are jointly insured by one policy, it is implied, by the very nature and fundamental purpose of the insurance contract, that both of the assured shall observe good faith toward the insurer, . . . that a fraudulent and felonious burning by either of the joint owners who are jointly insured is not in-

cluded within the contemplated risks," and that an innocent insured wife would not therefore recover where her husband had wilfully burned the insured property. *Matyuf, supra* at 365.

In the case of *Federal Insurance Co. v. Wong*, 137 F.Supp. 232 (S.D.Ca.1956), the court, presumably applying California law although no authority from California was cited, held that where one co-insured and "joint adventurer in the ownership and use of [a] truck" wilfully burned the truck, the other co-insured could not recover under the insurance policy. The court cited the provision from CJS, *supra*, cited in *Klemens, supra*, and further based its holding upon a provision in the policy therein at issue which stated that the policy insured against "direct and accidental loss of or damage to the automobile," observing that "to purposely and wilfully destroy a chattel by fire is not to bring about an accidental loss . . . [the innocent co-insured] was not insured against damage flowing from the deliberate tortious action of his joint adventurer." *Wong, supra* at 233.

In the later California case of *Erlin-Lawler Enterprises, Inc. v. Fire Insurance Exchange*, 267 Cal.App.2d 381, 73 Cal.Rptr. 182 (1968), which involved arson by corporate stockholders and officers and wherein the rule was stated that such arson does not necessarily preclude recovery on an insurance policy by the corporation if the arsonist(s) will not directly or indirectly benefit by the recovery, the Second District Court of Appeal cited with apparent approval the *Klemens* case, discussed *supra*, stating in reference thereto that "an innocent joint tenant has been denied recovery where the fire is set by the other joint tenant." *Erlin-Lawler, supra*, 73 Cal.Rptr. at 186. However, the court in reaching its holding, namely to remand for further facts on the issue of whether the arsonists therein would benefit by a recovery to the corporation, specifically stated that a factor to be taken into consideration was the nature of the property interest the remaining stockhold-

ers (the arsonist's ex-wives) had in the corporation—i. e. were their interests separate from those of the arsonists? *Id.*

It would seem likely that a California court would, based upon *Erlin-Lawler*, in a case such as the instant one, allow recovery if the innocent co-insured could prove that his or her interest in the property for which recovery is sought was severable, or separate, from that of the co-insured who destroyed the property.

It appears from our analysis of what appellee calls the "dominant line of authority" that in some seven states (Wisconsin, Massachusetts, Texas, Vermont, Virginia, Louisiana, and Pennsylvania), appellant would most likely lose his case, although in some he might attempt to distinguish his case on the basis that his interest in the property for which he claims recovery was severable and not joint. In Alabama, Michigan, and California, he most likely could win, as our discussions of the *Hosey, Simon,* and *Erwin-Lawler* cases illustrate. Appellee has directed us to no other case law supporting its position nor are we otherwise aware of any. Let us now consider other case law from the "new" dominant line of authority which supports appellant's position.

## AUTHORITIES ALLOWING RECOVERY—THE NEW "DOMINANT" RULE

Our research, along with that of the appellant, has brought to light ten jurisdictions, including Alabama, Michigan, and California, which would allow recovery under a policy such as the one herein at issue to an innocent co-insured whose interest in property, the loss of which was wrongfully caused by another co-insured, is severable from that of the other co-insured. In some of these jurisdictions, recovery would be allowed whether the property interest were several or joint, but we need not go so far in this case, as that issue is not before us. We find it sufficient to note that, as to the issue which is before us, a *new* "dominant line of authority" has emerged in the last

two years, at least six of the cases in this line having been decided since 1978.

The earliest case in this new line is the *Hoyt* case, *supra*, from New Hampshire, decided in 1942. In *Hoyt* one of three tenants in common intentionally burned the insured property. In holding that the two innocent co-insureds might recover under insurance policies each issued in all three names, the court considered how to construe the language in the policy:

> The mere fact that the language employed may be *sufficient* to "express a joint covenant" is not conclusive . . . whether the rights of obligees are joint or several is a question of construction . . . , and in construing an insurance contract *the test is not what the insurance company intended the words of the policy to mean but what a reasonable person in the position of the insured would have understood them to mean.*
>
> .    .    .    .    .
>
> The ordinary person owning an undivided interest in property, not versed in the nice distinctions of insurance law, would naturally suppose that his individual interest in the property was covered by a policy which named him without qualification as one of the persons insured. And the fact that under such circumstances the insurance company may have had good reasons for preferring to issue a joint policy . . . is unimportant *unless those reasons were disclosed*. . . . .

(emphasis added) *Hoyt*, supra, 29 A.2d at 123.

The *Erlin-Lawler* case from California was decided in 1960, and as we have indicated, a reading of the case strongly suggests that in a case such as this one, where recovery is claimed for property which arguably belongs to the claimant alone, or for property in which the claimant has at least a severable interest, recovery would be granted in California.

Our discussion of the *Simon* case, *supra*, decided in 1973, likewise illustrates that in the case before us the Michigan courts would hold for the appellant innocent co-insured, and allow him an opportunity to show that he had "the sole or major and separable interest in the articles lost" in the fire which destroyed his (and his wife's) house.

The *Howell* case, *supra*, from which we have quoted in our discussions of the *Domina* and *Hosey* cases, *supra*, was decided in 1974. The Superior Court of New Jersey in *Howell* considered a case similar to the one we are herein considering, except that there, the husband set the fire to the couple's house; the policy included coverage for increased living expenses until the burned house was repaired or until new permanent quarters were found; in the policy the named insured was listed as "Gene K. Howell and/or Donna L. h/w;" and recovery was sought for lost contents and for living expenses. The court held that the fraud of the husband was no bar to recovery under the policy by the innocent wife, "irrespective of whether the interests of the wife and husband in the . . . property, or in the contract rights under the policy are deemed to be joint or several." The "significant factor" was said to be that the responsibility for the fraud was "several and separate rather than joint, and the husband's fraud cannot be attributed or imputed to the wife . . . ." *Howell, supra,* 327 A.2d at 244. The use of the ambiguous term "and/or" in the policy was said to support the court's conclusion although it was not deemed controlling. *Id.* In regard to the general use of language in the policy, the court stated:

> With respect to a fire insurance policy covering the interests of more than one insured, however, there is much to commend the view that, unless the terms thereof are plainly to the contrary and in some fashion clearly called to the attention of the insureds, the obligation of the carrier should be considered several as to each person insured, and the fraud or misconduct of one insured should not bar recovery by the innocent co-insureds to

the extent of their respective interests in the property involved.

*Id.*, 327 A.2d at 243. The innocent wife was awarded one-half the policy limit for personal belongings lost and all her living expenses.

We have discussed the *Hosey* case, *supra*, which was decided in 1978, and our reading of the opinion suggests to us that, in Alabama, a case such as the instant one would be resolved in favor of the innocent co-insured.

In *Steigler v. Insurance Co. of North America*, 384 A.2d 398 (Del.1978), the Supreme Court of Delaware considered a case involving property owned by a couple as tenants by the entirety which was intentionally burned by the husband. The policy contained a provision regarding fraud by "the insured" similar to a provision in the policy at issue here. The court cited the *Howell* case with approval, noting that it represented a "more modern analysis of the problem and [produced] a fairer result." *Steigler, supra*, 384 A.2d at 402. The court also, we note, based its holding in favor of the innocent co-insured wife, on the ambiguous nature of the use of the words "the insured" in the fraud provision of the policy, noting that "where ambiguous, the language of an insurance contract is always construed most strongly against the insurance company which has drafted it," *Id.* at 400; and that "an insurance contract should be read to accord with the reasonable expectations of the purchaser so far as the language will permit." *Id.* at 401, *citing* various authorities including again, *Hoyt, supra*. The court found the word "insured" in the provision voiding the policy in case of fraud by "the insured" to be ambiguous "because the word 'insured' is singular while two persons are named as the 'insured'." *Id.* at 400.

In *Hildebrand v. Holyoke Mutual Fire Insurance Co.*, 386 A.2d 329 (Me.1978), the Supreme Judicial Court of Maine considered another case of an innocent co-insured wife whose husband had burned their house, which they owned as joint tenants. Although the husband was an "insured" at the time he burned the house, according to a definition clause similar to the one in the policy we are herein considering, the court held, citing *Howell, supra*, that "irrespective of whether the interests of the plaintiff and her husband in the destroyed property are deemed to be joint or several," the policy allowed recovery by the innocent wife "despite the fact that [the loss] resulted from the intentional act of another 'insured'." *Hildebrand, supra* at 331. We note that the court did *not* base its holding upon the fact that the husband was merely a "defined" insured. The court construed the term "insured" in the voiding-for-fraud provision of the policy "to mean a specific insured, namely, the insured who (1) is responsible for causing the loss and (2) is seeking to recover under the policy." *Id.*

In *Winter v. Aetna Casualty and Surety Co.*, 96 Misc.2d 497, 409 N.Y.S.2d 85 (1978), the New York Supreme Court held in favor of an innocent co-insured wife whose husband was guilty of "materially and substantially [increasing] the risk of fire" to their house, which they owned as tenants by the entirety. The court followed the reasoning of the New Jersey Court in *Howell, supra*, stating that the wife had a one-half interest in the fire insurance policy and that she was "entitled to recover the proceeds paid pursuant to the policy to the extent of her interest." *Winter, supra*, 409 N.Y.S.2d 85 at 88.

In *Economy Fire and Casualty Co. v. Warren*, 71 Cal.App.3d 625, 28 Ill.Dec. 194, 390 N.E.2d 361 (1979), the Appellate Court of Illinois held in favor of an innocent co-insured husband whose wife had burned their home which they owned as joint tenants. The court stated that it preferred the reasoning of *Hoyt, supra*, over that of *Klemens, supra*, and moreover stated that it did "not think the reasonable person in the position of [the innocent husband] would have supposed that the wrongdoing of his co-insured would be imputed to him. If the

[insurance company] intended such a result, it should have made the terms of the policy more express in this regard." *Warren, supra,* 28 Ill.Dec. at 197, 390 N.E.2d at 364.

Finally, in *Auto-Owners Insurance Co. v. Eddinger,* 366 So.2d 123 (Fla.App.1979), the Second District Court of Appeal of Florida held that an innocent co-insured wife whose husband had fraudulently burned the house which they owned as joint tenants could recover, citing *Howell* and *Hoyt, supra,* with approval and stating that:

> ... in construing the insurance policy, the question whether the coverage was joint or several [as to the two named insureds] must be construed in favor [of the innocent wife] since there is no clear indication to the contrary. The above policy language is capable of more than one possible interpretation. In such case the interpretation should be given which provides coverage to the insured.

*Eddinger, supra* at 124. The language to which the court referred is identical to language regarding fraud of "the insured," in the policy herein at issue.

### CONCLUSION

Although, as we have indicated, this Court has stated that in a case such as this it would follow the "dominant line of authority," we have herein illustrated that a *new* "dominant line" has emerged since our decision in *Cox, supra.* We find this new majority rule to be better reasoned, and to produce a more equitable result.

We find that a reasonable person, reading the provisions in the policy at issue here which refer to fraud of "the insured," and neglect of "the insured," etc. would conclude that if *an* insured was guilty of fraud or neglect or increasing of hazard to property, then *he or she* may not recover under the policy. If the company wanted to as-

sure its position, i. e. that misconduct of any insured would bar recovery by any other insured, it might have made it clear and unambiguous in the policy and it might have informed the prospective applicants for insurance of this position from the start. It did not do so in this case and it is bound by the language *it* unilaterally drafted into the "contract" of insurance between the parties.

The law in Tennessee is that an insurance policy is construed more strongly against an insurer who has prepared it, and in favor of the insured. *Harkavy v. Phoenix Insurance Co.,* 220 Tenn. 327, 417 S.W.2d 542, 545 (1967); *Sturgill v. Life Insurance Co. of Georgia,* 62 Tenn.App. 550, 465 S.W.2d 742, 745 (1972).

This being so, it necessarily results in this case that appellant Ryan should not be barred from recovery because of the misconduct of his wife in setting fire to their house, at least as to those items of contents in which he can show he had the sole or major and separable interest. As we have stated, we need go no further in our holding in regard to this case, since appellant seeks recovery only for items he claims belong to him.

This case is in conclusion remanded to the trial court for determination whether, if appellee wishes to raise the issue, appellant Ryan was indeed innocent of any participation in the wrongful burning of his house; whether and as to what items for which recovery is sought he had the sole or major and separable interest; and as to the proper amount of damages he should recover.

Reversed and remanded.

TODD and LEWIS, JJ., concur.

# APPENDIX

 # MFA INSURANCE COMPANIES

### Columbia, Missouri

| MFA MUTUAL INSURANCE COMPANY | | COUNTRYSIDE CASUALTY COMPANY |
|---|---|---|
| A MUTUAL COMPANY | DECLARATIONS - - PART A | A STOCK COMPANY |

THIS POLICY ISSUED BY: **MFA MUTUAL INSURANCE COMPANY**

(Hereinafter Called the "Company")

NAME AND ADDRESS OF INSURED

# SPECIMEN

{ **RYAN, JAMES AND WIFE BETTY M. RYAN**
ROUTE #6, BOX 47
SPRINGFIELD, TN 37172

POLICY NUMBER **7-742755**
ATTACHED TO POLICY FORM NO. **B-95.7-B**

The location of the described premises covered hereunder is:

**SEE ENDORSEMENT NEAR
SPRINGFIELD, ROBERTSON, TENNESSEE**

Policy Term: **12** MONTHS FROM **12:00 NOON MAY 15, 1978 TO MAY 15, 1979** and for successive policy terms as provided in General Condition 12.

Insurance is provided only with respect to the following Coverages for which a limit of liability is specified, subject to all conditions of this policy.

| Section I Coverages and Limit of Liability | A. DWELLING | B. APPURT. STRUCTURES | C. UNSCHEDULED PERSONAL PROPERTY | D. ADDITIONAL LIVING EXPENSE | Section II Coverages and Limit of Liability | E. PERSONAL LIABILITY (BODILY INJURY AND PROPERTY DAMAGE) EACH OCCURRENCE | F. MEDICAL PAYMENTS TO OTHERS | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Each person | Each accident |
| | 20,000. | 2,000. | 10,000. | 4,000. | | 25,000. | 1,000. | 25,000. |

Form and Endorsements made part of this Policy at time of issue:

Form **HO-2 (1-78)**
Endorsements **HO-206 (8-72)   B-4**

| PREMIUMS | | | DEDUCTIBLE—SECTION I- ANY LOSS BY PERILS INSURED AGAINST UNDER SECTION I OR THIS POLICY IS SUBJECT TO A DEDUCTIBLE EXCEPTIONS IF ANY |
|---|---|---|---|
| BASIC POLICY | ADDITIONAL | TOTAL PREPAID | |
| 130.40 | | 130.40 | **$100 DEDUCTIBLE APPLIES TO ALL PERILS** |

The described dwelling of **BRICK VENEER** construction is occupied by not more than **1** families.

**APPROVED**

Roof    Not more than    feet from Hydrant.    Not more than    miles from Fire Department.

Protection Class **10**    Zone **I**    Premium Group **6**

(a) The described dwelling is not seasonal; (b) no business pursuits are conducted on the described premises; (c) the described premises is the only premises where the Named Insured or spouse maintains a residence other than business or farm properties; (d) the insured has no full time residence employee(s); (e) the insured has no outboard motor(s) or watercraft otherwise excluded under this policy for which coverage is desired. Exception, if any, to (a), (b), (c), (d) or (e) *

*Absence of an entry means "no exceptions".

Section II—Additional residence premises, if any, located:

Subject to the stipulations, provisions, and conditions contained in the policy, the loss, if any, on building items, is payable to:

| Transaction | Date Issued |
|---|---|
| | .8-15-79 |
| | Agent Number |

* **INVESTORS SAVINGS AND LOAN ASSOCIATION
204 8TH AVENUE
SPRINGFIELD, TN 37172**

41-4220-10

Countersigned by_____

mortgagee, as his, her, its or their interest may appear.    Agent

THIS DECLARATIONS PAGE, WITH "POLICY PROVISIONS—PART B" FORM, AND ENDORSEMENTS IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETES THE ABOVE NUMBERED POLICY.

B-223.3-B

insurance over any other valid and collectible insurance which would apply in the absence of this policy.

c. Deductible: When loss under this policy is subject to a deductible, this Company shall not be liable for more than its share of such loss in excess of the deductible amount as provided in 6 a. or 6 b. above.

**7. APPORTIONMENT—SECTION II:**

a. Except as provided in 7 b. below if the Insured has other valid and collectible insurance against a loss covered under Coverage E—Personal Liability, this Company shall not be liable under this policy for a greater proportion of such loss than that stated in the applicable following provision:

(1) Contribution by Equal Shares;

If all of such other insurance includes a provision for contribution by equal shares, this Company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid. With respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(2) Contribution by Limits;

If any of such other insurance does not include a provision for contribution by equal shares, this Company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

b. With respect to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of any motor vehicle, recreational motor vehicle or watercraft to which this policy applies, this insurance under Coverage E—Personal Liability, shall be excess insurance over any other valid and collectible insurance available to the Insured.

**8. DEFINITIONS:** (Refer to Section II of the Form made a part of this policy for Additional Definitions).

When used in this policy the following definitions apply:

a. "Insured" means

(1) the Named Insured stated in the Declarations of this policy;

(2) if residents of the Named Insured's household, his spouse, the relatives of either, and any other person under the age of twenty-one in the care of any Insured; and

(3) under Coverage E—Personal Liability and Coverage F—Medical Payments to Others:

(a) with respect to animals or watercraft to which this insurance applies, owned by any Insured, any person or organization legally responsible therefor, except a person or organization using or having custody or possession of any such animal or watercraft in the course of his business or without the permission of the owner; and

(b) with respect to any vehicle to which this insurance applies, any employee of any Insured while engaged in the employment of the Insured.

b. "insured premises" means

(1) the residence premises described in the Declarations of this policy; and

(2) Under Section II only:

(a) any other residence premises specifically named in this policy;

(b) any residence premises acquired by the Named Insured or his spouse during the term of this policy;

(c) any residence premises which are not owned by any Insured but where an Insured may be temporarily residing;

(d) vacant land, other than farm land, owned by or rented to any Insured; and

(e) individual or family cemetery plots or burial vaults.

c. "residence premises" means

(1) a one or two family dwelling building, appurtenant structures, grounds and private approaches thereto; or

(2) that portion of any other building occupied as a residence;

provided that such premises is used as a private residence by the Named Insured or his spouse but excluding any portion of the premises used for business purposes.

d. "business" means

(1) a trade, profession or occupation, including farming, and the use of any premises or portion of residence premises for any such purposes; and

(2) the rental or holding for rental of the whole or any portion of the premises by any Insured;

but business shall not include:

(a) the occasional rental or holding for rental of the residence premises for dwelling purposes;

(b) the rental or holding for rental of a portion of the residence premises for dwelling purposes unless for the accommodation of three or more roomers or boarders;

(c) the rental or holding for rental of a portion of the residence premises for private garage purposes; or

(d) the rental or holding for rental of a portion of the residence premises as an office, school or studio.

**9. DEATH OF NAMED INSURED:** In the event of death of the Named Insured, the definition of "Insured" is modified as follows:

a. the Named Insured shall mean:

(1) the spouse, if a resident of the household at the time of such death; and

(2) the legal representative but only with respect to the premises and property of the deceased covered under this policy at the time of such death.

b. Insured shall also include:

(1) any member of the deceased's household who was covered under this policy at the time of such death, but only while a resident of the insured premises; and

(2) with respect to the property of the Named Insured, the person having proper temporary custody thereof, but only until the appointment and qualification of the legal representative.

**10. LIBERALIZATION CLAUSE:** If within 45 days prior to the inception of this policy, or during the term hereof, this Company adopts any revision of the forms or endorsements made part of this policy which would broaden coverage presently granted hereunder without additional premium charge, such broadened coverage will automatically apply to this policy.

**11. POLICY TERM:** This policy applies only to loss under Section I or bodily injury or property damage under Section II, which occurs during the policy term.

**12. CONTINUOUS RENEWAL** (Except Illinois, and Oklahoma): Subject to the consent of this Company, and subject to the premiums, rules and forms then in effect for this Company, this policy may be continued in force by payment of the required continuation premium for each successive policy term. Such continuation premium must be paid to the Company prior to the expiration of the then current policy term and if not so paid the policy shall terminate.

With respect to a mortgagee (or trustee) declared under this policy, this insurance will continue in force as to only the interest of the mortgagee (or trustee) for ten (10) days after written notice of termination to the mortgagee (or trustee), and shall then terminate.

**CONTINUOUS RENEWAL** (Illinois only): Subject to the premiums, rules and forms then in effect for this Company, this policy may be continued in force by payment of the required continuation premium for each successive policy term. Such continuation premium must be paid to the Company prior to the expiration of the then current policy term and if not so paid the policy shall terminate.

With respect to a mortgagee (or trustee) declared under this policy, this insurance will continue in force as to only the interest of the mortgagee (or trustee) for ten (10) days after written notice of termination to the mortgagee (or trustee), and shall then terminate.

**CONTINUOUS RENEWAL** (Oklahoma only): Subject to the consent of this Company, and subject to the premiums, rules and forms then in effect for this Company, this policy may be continued in force by payment of the required continuation premium for each successive policy term, but this policy shall not be continued for longer than a total policy period of five years. Such continuation premium must be paid to the Company prior to the expiration of the then current policy term and if not so paid the policy shall terminate.

With respect to a mortgagee (or trustee) declared under this policy, this insurance will continue in force as to only the interest of the mortgagee (or trustee) for ten (10) days after written notice of termination to the mortgagee (or trustee), and shall then terminate.

**Concealment, fraud.** This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.

**Uninsurable and excepted property.** This policy shall not cover accounts, bills, currency, deeds, evidences of debt, money or securities; nor, unless specifically named hereon in writing, bullion or manuscripts.

**Perils not included.** This Company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by: (a) enemy attack by armed forces, including action taken by military, naval or air forces in resisting an actual or an immediately impending enemy attack; (b) invasion; (c) insurrection; (d) rebellion; (e) revolution; (f) civil war; (g) usurped power; (h) order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, provided that such fire did not originate from any of the perils excluded by this policy; (i) neglect of the insured to use all reasonable means to save and preserve the property at and after a loss, or when the property is endangered by fire in neighboring premises; (j) nor shall this Company be liable for loss by theft.

**Other Insurance.** Other insurance may be prohibited or the amount of insurance may be limited by endorsement attached hereto.

**Conditions suspending or restricting insurance.** Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured; or (b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days; or (c) as a result of explosion or riot, unless fire ensue, and in that event for loss by fire only.

**Other perils or subjects.** Any other peril to be insured against or subject of insurance to be covered in this policy shall be by endorsement in writing hereon or added hereto.

**Added provisions.** The extent of the application of insurance under this policy and of the contribution to be made by this Company in case of loss, and any other provision or agreement not inconsistent with the provisions of this policy, may be provided for in writing added hereto, but no provision may be waived except such as by the terms of this policy is subject to change.

**Waiver provisions.** No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of this Company relating to appraisal or to any examination provided for herein.

**Cancellation of policy.** This policy shall be cancelled at any time at the request of the insured, in which case this Company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be cancelled at any time by this Company by giving to the insured a five days' written notice of cancellation with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand.

**Mortgage interests and obligations.** If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the insured, such interest in this policy may be cancelled by giving to such mortgagee a ten days' written notice of cancellation. If the insured fails to render proof of loss such mortgagee, upon notice, shall render proof of loss in the form herein specified within sixty (60) days thereafter and shall be subject to the provisions hereof relating to appraisal and time of payment and of bringing suit. If this Company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage. Other provisions relating to the interests and obligations of such mortgagee may be added hereto by agreement in writing.

**Pro rata liability.** This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not.

**Requirements in case loss occurs.** The insured shall give immediate written notice to this Company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed; and within sixty days after the loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: the time and origin of the loss, the interest of the insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all policies and, if required, verified plans and specifications of any building, fixtures or machinery destroyed or damaged. The insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, and submit to examinations under oath by any person named by this Company, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made.

**Appraisal.** In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

**Company's options.** It shall be optional with this Company to take all, or any part, of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, on giving notice of its intention so to do within thirty days after the receipt of the proof of loss herein required.

**Abandonment.** There can be no abandonment to this Company of any property.

**When loss payable.** The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company or by an award as herein provided.

**Suit.** No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss.

**Subrogation.** This Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company.

In Witness Whereof, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized Agent of this Company at the agency hereinbefore mentioned.

_Paul Fuchtler_ Secretary.

_A. J. Sappington_ President.