**IN THE COURT OF APPEALS OF TENNESSEE**
**AT KNOXVILLE**

**FILED**

**June 8, 1999**

**Cecil Crowson, Jr.**
**Appellate Court**
**Clerk**

| | |
|---|---|
| HOMER R. (TOBY) BARNES, et al., | ) C/A NO. 03A01-9812-CH-00403 |
| | ) |
| Plaintiff-Appellee, | ) SEVIER CHANCERY |
| | ) |
| v. | ) HON. TELFORD E. FOGETY, JR., |
| | ) CHANCELLOR |
| EMPLOYERS MUTUAL CASUALTY | ) |
| COMPANY, | ) AFFIRMED |
| | ) AND |
| Defendant-Appellant. | ) REMANDED |

JAMES H. RIPLEY, SHARP & RIPLEY, Sevierville, for Plaintiff-Appellee.

FRANK Q. VETTORI, O'NEIL, PARKER & WILLIAMSON, Knoxville, for Defendant-Appellant.

## O P I N I O N

Franks, J.

In this Declaratory Judgment action, the Trial Judge entered summary judgment against Employers Mutual Casualty Company, in favor of the plaintiffs, declaring "[t]he defendant owes the plaintiffs a duty of defense of the action pending in the Circuit Court for Sevier County, Tennessee, captioned Devin Phillips v. Toby Barnes . . . and further owes indemnity coverage respecting such claim, pursuant to the policies of insurance in question . . .". The judgment was entered pursuant to T.R.C.P. Rule 54.02, and the insurance company has appealed that decision to this Court.

The action mentioned in the judgment arose due to a Complaint for malicious prosecution which was filed against plaintiff Barnes and The Christmas

Place, Inc., by Phillips, a former employee of The Christmas Place.

An employee of The Christmas Place told Barnes that Phillips was observed taking three 100 dollar bills out of the cash register at the store, and Phillips told the employee, "You didn't see this." A $300 discrepancy in the cash drawer was discovered on November 30, 1996. Barnes investigated the discrepancy, without success. On December 5, 1996, Barnes terminated Phillips' employment with The Christmas Place. The next day, on December 6, 1996, Barnes presented the facts to the Deputy Clerk of the Trial Justice Court, and an arrest warrant was issued for Phillips for misdemeanor theft. On March 11, 1997, Phillips was acquitted of the theft charge, and on June 19, 1997, Barnes was served with the Complaint for malicious prosecution. He gave notice of the suit to the insurer of The Christmas Place on June 20, 1997. He explained that prior to the filing, he had no warning or notice of any kind that Phillips intended to bring the action.

Mr. Barnes stated that in initiating the prosecution of Phillips, he was acting out of his duty as director and manager of The Christmas Place and not out of any personal concerns. He stated that The Christmas Place did not make a regular practice of prosecuting its employees or former employees, and that Phillips status as a former employee was irrelevant to the decision to prosecute because any person taking money from the cash register would have been prosecuted.

Summary Judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993). Since only a question of law is involved in this case,[1] the review of the grant of summary judgment is *de novo*, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618 (Tenn. 1997).

---

[1] The scope of insurance coverage and the insurer's duty to defend present questions of law. *Standard Fire Ins. Co. V. Chester-O'Donley & Assoc. Inc.,* 972 S.W.2d 1,5 (Tenn. App. 1998).

An insurance policy must be construed in a reasonable and logical manner to determine the intent of the parties. *Setters v. Permanent General Assur. Corp.*, 937 S.W.2d 950, 953 (Tenn. App. 1996). The language of the policy must be given its plain and ordinary meaning as a layman would understand it. *Paul v. Insurance Co. of North America*, 675 S.W.2d 481, 483-484 (Tenn. App. 1984). Where an ambiguity exists in an insurance policy, the ambiguity is to be construed strongly against the insurer in favor of the insured, *Travelers Ins. Co. v. Aetna Cas. & Sur. Co.*, 491 S.W.2d 363, 366 (Tenn. 1973); *Ryan v. MFA Mut. Ins. Co.*, 610 S.W.2d 428, 437 (Tenn. App. 1980), and the Supreme Court has said that ambiguities in "exceptions, exclusions, and limitations in policies of insurance are to be most strongly construed against the insurer." *Travelers Ins. Co.*, 491 S.W.2d at 367.

In the contract of insurance before us, under the title "WHO IS AN INSURED," the contract provides coverage for the named insured, The Christmas Place, Inc. Coverage also extends to the corporation's executive officers and directors, but only with respect to their duties as officers or directors. Coverage also extends to employees other than officers and directors, but only for acts within the scope of their employment. Excluded from coverage of an employee acting within the scope of employment is personal injury to a co-employee "while in the course of his or her employment or while performing duties related to the conduct of your business."

Defendant concedes that Barnes was a director, managing officer, and manager of The Christmas Place, Inc., and Barnes, in his affidavit stated that at all times he was acting in his capacity as director and manager of the Christmas Place. Barnes testimony was not disputed, and under the policy his coverage is that of an officer and director, and not just as a "co-employee".

The policy states that it applies to bodily injury, property damage, personal injury, and advertising injury. At issue is "personal injury." The policy

3

applies to personal injury "caused by an offense arising out of your business, . . . ." "Personal injury" is defined as an "injury other than 'bodily injury,' arising out of one or more of the following offenses:"

> **a.** False arrest, detention or imprisonment;
> **b.** Malicious prosecution;
> **c.** . . .
> **d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
> **e.** . . . .

Accordingly, the policy specifically provides coverage to the insured for suits against the insured for malicious prosecution.

While the policy specifically provides coverage for malicious prosecution, it also contains an exclusion which the defendant claims excludes coverage in this case. In an amendment to the policy, titled "EMPLOYMENT-RELATED PRACTICES EXCLUSION," the policy states:

> This insurance does not apply to:
>
> 1. "Bodily injury" or "personal injury" to:
>
> a. A person arising out of any:
> (1) Refusal to employ that person;
> (2) Termination of that person's employment; or
> (3) Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; . . .

Using the definition of personal injury set forth in the policy, the defendant seems to rewrite this exclusion in their brief to say, "This insurance does not apply to false arrest or malicious prosecution claims of a person arising out of any refusal to employ that person; termination of that person's employment; or employment-related practices, policies, acts or omissions . . . ." The defendant then argues that if the individual is insured under the policy due to being either an officer or employee of The Christmas Place, and that individual fires an employee of the business for alleged

4

theft out of the cash register during his employment, then later has an arrest warrant issued for the employee and prosecutes that employee for the alleged theft, then the resultant false arrest and subsequent malicious prosecution must arise out of the employment-related practices, policies or acts or omissions, which are excluded from policy coverage.

"Personal Injury" is defined in the policy as meaning false arrest and malicious prosecution, among other things. The exclusion does not attempt to alter the definition of "personal injury." It simply excludes coverage for "personal injury" arising out of certain employment-related situations. This part of the exclusion is not ambiguous, but what is ambiguous is one of the limited situations to which the personal injury exclusion applies. The injury in this case did not arise out of a refusal to employ a person, nor did it arise out of termination of employment, because Phillips brought suit against the plaintiff for malicious prosecution due to his arrest and subsequent prosecution, not his termination of employment. The question thus becomes whether the alleged malicious prosecution arose out of "employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person."

Plaintiffs argue that the prosecution of Phillips was not an employment-related practice, policy, act, or omission. They assert that The Christmas Place would prosecute any person for stealing, whether that person were an employee or merely a customer. Barnes asserted that this is the only instance he can remember where a former employee was prosecuted. Thus the prosecution could not be, he contends, a "practice" or "policy." Further a criminal prosecution is not related to normal employment sanctions, like discipline or reassignment. While defendant here does not explicitly state its position, it indicates that because Phillips was an employee when he

5

allegedly took the money, his subsequent prosecution was employment-related.

A reasonable interpretation of this exclusion is that the employment-related practices, policies, acts, or omissions are limited to the types of things listed in the provision. By providing such a list, which includes "coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination," the policy indicates that only these types of employment-related matters are covered. Situations in which the employment relationship is more tenuous would not be covered. This analysis is consistent with *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 887-888 (Tenn. 1991), where the Supreme Court said that the broad phrase "arising out of" should not include any causal relationship.

Considering the policy wording in the light of the foregoing, the prosecution of Phillips would not be considered to be the type of employment-related practice, policy, act or omission which is included in this provision. Prosecution for alleged theft cannot be brought into the realm of the provision merely because it incidentally causes humiliation, which could be employment-related practice, if the prosecution did not arise out of the employment practice. The provision at issue is ambiguous, because the plain and ordinary meaning of the language does not clearly indicate whether malicious prosecution of a former employee is excluded.

Accordingly, prosecution of a former employee for theft does not appear to be the type of employment-related practice, policy, act or omission to which the exclusion applies, since the insurance policy explicitly provides coverage for malicious prosecution. Moreover, any ambiguities, especially those in exclusions, must be construed strongly against the insurer, and on this basis, we affirm the grant of summary judgment declaring coverage under the policy.

Finally, defendant argues that it does not have the duty to defend and indemnify because Barnes did not comply with the notice provision in the policy. The

6

contract of insurance provides:

2. Duties in the Event of Occurrence, Offense, Claim or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

1. How, when and where the "occurrence" or offense took place;
2. The names and addresses of any injured persons and witnesses, and
3. The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

1. Immediately record the specifics of the claim or "suit" and the date received; and

2. Notify us as soon as practicable.

"Occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," but "offense" is not defined.

Defendant concedes that provision (b) was complied with, because Barnes gave notice of the suit immediately after receiving the Complaint for malicious prosecution, but it claims that provision (a) was not complied with, because Barnes did not give notice of an "occurrence." Since the policy defines "occurrence" as an accident, and this case involves an alleged intentional tort instead of an accident, no "occurrence" happened in this case for Barnes to report. Thus the issue becomes whether an offense took place which Barnes should have reported.

An insured has a duty to give notice when, "an ordinarily or reasonably prudent person would have known of the occurrence of an event that might reasonably be expected to produce a claim against the insurance company." *Allstate Ins. Co. v. Wilson*, 856 S.W.2d 706, 709 (Tenn. App. 1992). Admittedly, Barnes knew that he

7

was prosecuting Phillips for theft, but he stated that he believed that Phillips did steal the money and that he was justified in prosecuting him. It is reasoned that if the prosecution was justified, there would be no reason to expect such prosecution would give rise to a malicious prosecution claim.

On these facts, this is not the type of "offense" which a reasonably prudent person would expect to give rise to a claim. Accordingly, we hold that Barnes did not violate the insurance policy by failing to inform the insurance company that he was about to prosecute Phillips for theft. His first notice of a claim or a potential claim was when the Complaint was filed, and then he gave notice immediately thereafter, as required under the policy.

We affirm the judgment of the Trial Court, and remand with the cost of the appeal assessed to the appellant.

_____
Herschel P. Franks, J.

CONCUR:

_____
Houston M. Goddard, P.J.

_____
H. David Cate, Sp.J.

8