**AMERICAN ECONOMY INSURANCE COMPANY, Defendant-Appellant,**

v.

**Joann LIGGETT, Plaintiff-Appellee.**

**No. 3–780A215.**

Court of Appeals of Indiana,
Third District.

Sept. 30, 1981.

R. Kent Rowe, Lewis C. Laderer, Jr., Paul M. Oleniczak, Rowe & Laderer, South Bend, for defendant-appellant.

A. Howard Williams, Richard J. McDonald, Patrick, McDonald, Donnelly, Warter & Williams, South Bend, for plaintiff-appellee.

GARRARD, Judge.

In this case the trial court granted summary judgment in favor of a policy holder for a fire loss claim although there was an issue of fact concerning whether the claimant's deceased husband may have caused the fire. Stressing that the claimant's innocence of any complicity was stipulated by the parties, Judge Beamer analyzed the reasons supporting the competing rules of law on the question thus presented. We agree with his conclusion and adopt his opinion as the decision of this court:

"This dispute is over the proceeds of a homeowners insurance policy following a fire loss at the insured premises in St. Joseph County, Indiana. Most of the facts

are stipulated, including the existence of coverage and the plaintiff's damages. There is a factual dispute as to whether the plaintiff's late husband, Duwaine Liggett, intentionally started the fire which caused the loss which is the subject of this litigation. The parties advance different views of the law. The defendant insurance company contends that any intentional act of the late Mr. Liggett in setting the fire which caused the loss constitutes a complete bar to any recovery by the plaintiff under the policy. The plaintiff asserts that even if her late husband deliberately set the fire she is entitled to recover fully from the defendant for the insured loss.

The question presented is one of first impression for the courts of Indiana. Under my view of the law, the remaining factual dispute is not material and the plaintiff is entitled to summary judgment. Even assuming that the late Duwaine Liggett did intentionally start the fire which caused the loss, it is stipulated (paragraph 6) that the plaintiff, Joann Liggett, was away from home when the fire started and that she is innocent of any wrongdoing with regard to starting the fire.

## A LITTLE HISTORY—THE WRONG REASONS

Until recently it was generally the law in this country that where one of two or more insureds intentionally caused the loss to the insured property, the remaining insureds, although entirely innocent of any wrongdoing, could not recover. This rule was applied with special vigor where the insureds were husband and wife and additional reasons were found for the denial of coverage where the spouses owned the insured property as tenants by the entireties. Two principal reasons are advanced in these cases for the denial of coverage. The first is the claim of fraud. The carrier asserts that the policy is void based upon the following policy language:

'This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.' (This is the language of the policy involved in this case.)

■ Even a casual reading of this policy clause reveals that it has no application to the circumstances presented in this case. Fraud generally, and as defined by the policy, is a willful concealment or misrepresentation of a material fact in the hope that the insurance company will rely upon it. In the usual case, the fraud arises when the insured signs a proof of loss form swearing that he has suffered a loss insured by the policy and assuring the company that he did nothing to increase the risk or to cause the loss for which he seeks reimbursement. This situation is illustrated by *Ijames v. Republic Ins. Co.* (1971), 33 Mich.App. 541, 190 N.W.2d 366, where the husband and wife as joint insureds signed the proof of loss. In denying recovery, the court quoted from and followed a Michigan Supreme Court case which said:

'The attempt to defraud the company by any one of the insured, by the making of false affidavits in relation to the loss is a complete bar to a recovery on the policy.'

190 N.W.2d at 369, quoting *Monaghan v. Agricultural Fire Insurance Company* (1884), 53 Mich. 238, 18 N.W. 797.

■ The typical certificate which the insured gives the carrier as a part of the proof of loss is set forth in the case of *Hosey v. Seibels Bruce Group, S. C. Ins. Co.* (1978), Ala. 363 So.2d 751, 752 and is as follows:

'The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void . . . .'

It should first be noted that the language of the proof of loss form is not a part of the contractual agreement between the parties

(the insurance policy) and constitutes an additional condition imposed upon insureds after the fact.

■ However, even if [such an imposition is] valid, the plaintiff in this case is guilty of no fraud and the policy language quoted above has no application. It is stipulated that the plaintiff is innocent of any wrongdoing. It is further stipulated that her husband and co-insured died contemporaneously with the fire. The plaintiff, being entirely innocent of any wrongdoing, could not have concealed or misrepresented any material fact concerning the insurance and her late husband was not around to do so after the fire.

The position taken by the insurance carriers and generally upheld by the courts barring recovery by innocent mortgage holders, partners and spouses was obviously harsh and inequitable. The opinion in *Hoyt v. New Hampshire Fire Ins. Co.* (1942), 92 N.H. 242, 29 A.2d 121, 148 A.L.R. 484, was influential in changing the direction of law. In *Hoyt*, two of three business partners who were tenants in common and joint insureds sued to recover their losses under a fire insurance policy. It was admitted that the third partner had set the fire which caused the loss and he had plead guilty to arson. The question presented was certified by the trial court to the Supreme Court of New Hampshire which held that the fact that the three joint tenants were co-insureds under one policy did not mean that the two innocent partners had violated the terms and conditions of that policy. The court held that the rights of the policy holders were several and not joint and that:

'[I]n construing an insurance contract the test is not what the insurance company intended the words of the policy to mean but what a reasonable person in the position of the insured would have understood them to mean.'

29 A.2d at 123.

The New Hampshire Supreme Court also gave early recognition to the principle that the reasonable expectations of the insured should be honored:

'The ordinary person owning an undivided interest in property, not versed in the nice distinctions of insurance law, would naturally suppose that his individual interest in the property was covered by a policy which named him without qualification as one of the persons insured.'

29 A.2d at 123.

Notwithstanding the harshness of the general rule and the break in the dam which the *Hoyt* case, *supra*, represented, the general rule is followed today in some jurisdictions, at least if the insureds are husband and wife. Two reasons are advanced. The first is the fictional 'oneness' of the married couple; the thesis that they constitute but a single legal entity in contemplation of law. This view is illustrated by the recent decision of the Virginia Court in *Rockingham Mutual Ins. Co. v. Hummel* (1979), 219 Va. 803, 250 S.E.2d 774:

"[U]nder the policy and as the 'insured,' each spouse had the joint obligation to use all reasonable means to save and preserve the property . . . . If either spouse violated any one of the duties, the breach was chargeable to the 'Named Insured' preventing either spouse from recovering any amount under the policy."

250 S.E.2d at 776.

The second ground advanced is that where the spouses own the insured property as tenants by the entireties, it is impossible to determine or separate out the interest of the innocent spouse and that therefore recovery must be denied altogether. This view is illustrated by the case of *Cooperative Fire Ins. Assoc. of Vermont v. Domina* (1979), 137 Vt. 3, 399 A.2d 502.

Strangely, many of the decisions adopting this rule apply it to deny recovery to the innocent spouse for additional living expenses and damage to personal property where a tenancy by the entireties is not possible.

These bases for denial of recovery likely have their foundation in ancient rules concerning coverture and a married woman's inability to separately own and sell property.

Western civilization is based upon the premise of individual responsibility for wrongdoing. We do not impose vicarious liability for torts (including fraud) on our spouses just because of the marital relationship. More appropriately, since arson is a crime, we do not impose vicarious liability for criminal conduct upon those who are totally innocent whether they are married to the criminal or not.

Similarly, the second leg of this argument is inapposite. The legal fiction of the entireties' estate in real estate is designed for the protection of the spouses and the marriage. It was initially designed to prevent the individual creditors of either spouse from taking the marital home. The courts generally, and divorce courts in particular, find no difficulty in dividing an entireties estate. I find it a perversion of this legal fiction, designed to protect the spouses' rights and marital property, to use it to destroy the property rights of an innocent spouse. Additionally, this ground has no application in the present case because the plaintiff's husband is dead. There is no difficulty in ascertaining her interest in the entireties real estate. As the surviving spouse she owns it all.

In any event, these arguments advanced in favor of the historical general rule were wrongheaded when first advanced by the carriers and the courts and remain so today. It is not an undivided interest in real estate which is in issue in these cases but a claim or chose in action against an insurance company; a right to be reimbursed for the loss which has been sustained.

There are valid reasons for denying recovery in some cases like this one, but they are never addressed in the cases advancing the grounds discussed above and are rarely discussed even in the cases adopting the opposite view.

## THE RIGHT REASONS

### I. The Guilty Must Not Profit

■ As a matter of public policy, we deny any recovery of insurance proceeds to a beneficiary of a life insurance policy who has murdered the insured. The law does not permit the guilty party to profit from his wrongdoing. There is no clause or policy language which purports to deny insurance benefits to the murderer. It is pure and simple a matter of fundamental justice and equity expressed as the public policy of the law. Similarly, the arsonist whose business is failing and who cannot sell his property must not be permitted, as a matter of public policy, to find a way out of his dilemma by setting a fire.

It may also be appropriate to prevent the depressed, jealous, murderous [1] or even insane spouse from profiting by setting a fire by denying that spouse any recovery from an insurance carrier.

This public policy is easily vindicated by denying any recovery to the living guilty spouse and permitting the innocent spouse recovery of one-half of the insured loss within policy limits. Where there is some prospect that the guilty party might benefit, even indirectly, a careful factual analysis can be made by the trial court to determine whether that prospect exists and to protect against it. *Erlin-Lawler Enterprises, Inc. v. Fire Insurance Exchange* (1968), 267 Cal.App.2d 381, 73 Cal.Rptr. 182; *Hildebrand v. Holyoke Mut. Fire Ins. Co.* (Me. 1978), 386 A.2d 329.

■ In this case the valid public policy reason denying profit to a possible wrongdoer does not exist. Mr. Liggett is dead and will receive his reward (or punishment) in another forum.

### II. The Principle of Fortuitousness

■ The insurance policy involved in this case contains no language excluding

1. In *Steigler v. Insurance Co. of North America* (1978), Del., 384 A.2d 398, 402 at footnote 4, the Delaware Supreme Court said, 'We pause to note that, in this singular case, plaintiff invites our attention to public records which reveal, among other things, that Herbert F. Steig-ler was convicted of assault with intent to murder Arlene R. Steigler by the very burning which is the basis of the insurance claim in this action. While not determinative, a ruling affirming the judgment below would penalize the victim with the perpetrator of the crime.'

from coverage damage caused by fires which are not accidental or which are caused intentionally by the insured. However, it is generally recognized that, as Professor Keeton says:

'... [I]nsurance contracts do not cover economic detriment that is not fortuitous from the point of view of the person (usually the insured) whose detriment is asserted as the basis of the insurer's liability. For example, a loss is not fortuitous in this sense if caused intentionally by that person.'

Keeton, *Insurance Law*, Sec. 5.3(a) (1971).

As Professor Keeton suggests, this basis for insurance company non-liability is not expressed anywhere in the insurance contracts but is an 'implied exception' which arises from the nature of the agreement between the parties and the circumstances to which it applies.

'... [O]ne of these basic principles supports the notion that an implied exception is a rule of interpretation designed only to apply in the absence of explicit agreement; the other, that it is a rule of public policy applicable regardless of explicit agreements to the contrary.

Implied exceptions have in some instances been shaped in part under the influence of other public policies as well as the two principles already stated. For example, objectives assertedly served by implied exceptions in life insurance cases have included, first, avoiding profit from wrongdoing, second, deterring crime, third, avoiding frauds against insurers, and fourth, maintaining coverage of a scope probably consistent with the reasonable expectations of the contracting parties on matters as to which no intention or expectation was expressed.

The last of these objectives, like the first principle stated above, supports a rule of interpretation of contracts that can be rendered inapplicable by explicit agreement. The other three, however, lend support to a rule of overriding public policy. In most instances, the state of precedents does not resolve this question about the nature of the implied exception

in a given area of insurance law. More often than not, the point need not be decided in the particular case and the reasons advanced for decision tend to include variations on both these somewhat competitive ideas.'

Keeton, *supra*, § 5.3(a) at p. 279.

In this case, it is apparent that none of the public policy considerations enumerated support implying an exception from coverage. Since the possible arsonist is dead, there is no chance of deterring or penalizing [his conduct] and, as has already been discussed, there has been no fraud against the insurance company either in the conventional sense or as defined by the company's policy language.

It should be noted at the outset that there is no reason why this implied exception cannot be made an express exception in the policy. It could be written in bold letters and red ink across the face of the policy:

IF YOU OR ANY PERSON INSURED BY THIS POLICY DELIBERATELY CAUSES A LOSS TO PROPERTY INSURED THEN THIS POLICY IS VOID AND WE WILL NOT REIMBURSE YOU OR ANYONE ELSE FOR THAT LOSS.

The law frequently adopts constructions of policy language which are at odds with the construction urged by the insurance industry. We do so to honor the reasonable expectations of the insured. Professor Keeton states the principle as follows:

'The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.'

Keeton, *supra*, § 6.3(a), p. 351.

As Professor Paterson says concerning contracts of adhesion:

'The court interprets the form contract to mean what a reasonable buyer would expect it to mean, and thus protects the weaker party's expectation at the expense of the stronger's. This process of

interpretation was used many years ago in interpreting (or construing) insurance contracts.'

Paterson, *The Interpretation and Construction of Contracts*, 64 Colum.L.Rev. 833, 858 (1964). *See also* Kessler, *Contracts of Adhesion*, 43 Colum.L.Rev. 629 (1943); *Gray v. Zurich Ins. Co.* (1966), 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168; Keeton, *Insurance Law Rights at Variance with Policy Provisions*, 83 Harv.L.Rev. 961, 1281 (1970).

As has been said by the California Court of Appeals:

'The courts will not sanction a construction of the insurer's language that will defeat the very purpose or object of the insurance.'

*Ritchie v. Anchor Casualty Co.* (1955), 135 Cal.App.2d 245, 257, 286 P.2d 1000, 1007.

The insurance companies write the policies; we buy their form or we do not buy insurance. Under familiar rules, where policy language is ambiguous, it is to be construed against its author. It seems to me that where such policy language is nonexistent, it is much more appropriate to give precedence to that sometimes competing principle of insurance law that the reasonable expectations of the insured should be honored.

■ Moreover, it is now clear that the question of forfuitousness is to be examined from the point of view of the person making the claim. As Professor Keeton says:

'Confusion has arisen with respect to the point of view from which a court should examine the question whether loss is accidental. Some opinions and other legal writings have declared that the question is to be examined from the point of view of the insured; others, from the point of view of the person injured. But, with perhaps a few exceptions cases in these opposite groups may in fact be quite consistent by a more appropriate standard of classification. The meaning of 'fortuitous,' 'accidental,' or like terms should be determined from the point of

view of the person whose interest is protected by the policy.'

Keeton, *supra*, at 289, 290.

In the instant case, Joann Liggett, the plaintiff, is the sole surviving insured, the person injured, and the person who seeks the protection of the insurance policy. Since it is stipulated that she is entirely innocent of any connection with the fire, then as to her and from her point of view, that fire was fortuitous and accidental.

'. . . [I]t is not enough to preclude coverage for a named or additional insured of a policy that the harm was intentionally caused from the point of view of another named or additional insured of the same policy. This . . . proposition is consistent with the principles of public policy underlying implied exceptions, and it is also the most common interpretation of policy provisions precluding coverage for intentionally caused injuries.'

Keeton, *supra*, § 5.4(b) p. 292. *See also Employers Mut. Liab. Ins. Co. v. Hendrix* (4th Cir. 1952), 199 F.2d 53; *Arenson v. National Auto & Cas. Ins. Co.* (1955), 45 Cal.2d 81, 286 P.2d 816; *Nuffer v. Insurance Company of No. Amer.* (4th Dist. 1965), 236 Cal.App.2d 349, 45 Cal.Rptr. 918; 7 A Appleman, *Insurance Law* § 4492 (rev. ed. 1962).

■ The law does not require us to foresee the criminal act of another. We are permitted to insure against losses caused by theft, arson or burglary. From the point of view of Joann Liggett, such possible acts on the part of her late husband were as unforeseeable and fortuitous as his apparent ultimate act of self destruction.

## THE MODERN VIEW

It is not surprising that the fire case which permitted recovery to an innocent spouse whose husband set fire to their entireties property is closely parallel on its facts. In *Howell v. Ohio Casualty Ins. Co.* (1973), 124 N.J.Super. 414, 307 A.2d 142, *affirmed on appeal* (1974), 130 N.J.Super. 350, 327 A.2d 240, the trial court judge characterized the issues as follows:

'This matter comes before the court on cross motions for summary judgment. The defendant, The Ohio Casualty Insurance Company, seeks to deny payment to a wife, who played no part in her house being destroyed by fire, under a fire insurance policy, because her spouse intentionally set fire to their home. The house was destroyed and the husband took his own life while the building was in flames.'

While accepting the insurance company's assertion that burning the house constituted fraud, the court determined that the interests of the co-insured spouses were severable and not joint and that there should be no imputation of the husband's misconduct to the wife. The fictional identity of husband and wife is characterized as a 'metaphysical concept which cannot be seriously defended today.'

'Even if it could be said that the realty was owned jointly, certainly the contract rights under the fire policy could not be said to be in the same category. This court views those rights as personal property able to be possessed separately and individually by both spouses.'

307 A.2d at 145.

The trial court awarded judgment for one-half of the damages caused by the fire within the limits of the policy. That result was affirmed on appeal but with a new emphasis:

'We hold that the trial court correctly determined that the fraud of the husband was no bar to recovery under the policy by the innocent wife. However, we reach this result irrespective of whether the interests of the wife and husband in the tenancy by the entirety, in the personal property, or in the contract rights under the policy are deemed to be joint or several. The significant factor is that the responsibility or liability for the fraud— here, the arson—is several and separate rather than joint, and the husband's fraud cannot be attributed or imputed to the wife who is not implicated therein. Accordingly, the fraud of the co-insured husband does not void the policy as to plaintiff wife.'

On appeal, the plaintiff wife contended, unfortunately for the first time, that she was entitled to recover the entire value of the personal property. The Appellate Division rejected that contention as having been waived by her but did permit her to recover fully the entire cost of her additional living expenses. The plaintiff's house had earlier been fully repaired by the carrier.

We should not find it surprising that the *Howell* case is the first departure from the historical rule involving a husband and wife and entireties property. The *Howell* case and the instant case are the only two cases I have found where the generally unexpressed but legitimate fear of benefiting a wrongdoer is nonexistent because the culpable spouse is dead.

Since the decision of the New Jersey court in the *Howell* case, the great majority of states that have considered the question as one of first impression have followed or expanded upon the principles enunciated there:

*Hosey v. Seibels Bruce Group, S. C. Ins. Co.* (1978), Ala., 363 So.2d 751, (wife convicted of arson—insured interest of the spouses held severable and neither the arson nor her fraud in filing a false proof of loss precludes recovery by the husband to the extent of his interest in the insured property—husband sole owner of the real estate);

*Steigler v. Insurance Company of North America* (1978), Del., 384 A.2d 398, (husband burned entireties property—real estate law held inapplicable to the wife's insurance claim—criminal act not imputed to other spouse—reasonable expectations of ordinary purchaser of insurance should be honored—wife awarded one-half the damages within the coverage limits—husband alive);

*Auto Owners Ins. Co. v. Edinger* (Fla. App.1979), 366 So.2d 123, (former spouses tenants in common following divorce and joint insureds. Summary judgment for innocent wife affirmed—policy language found ambiguous—'interpretation should be given which provides coverage to the insured');

· *Economy Fire & Cas. Co. v. Warren* (1979), 71 Ill.App.3d 625, 28 Ill.Dec. 194, 390 N.E.2d 361, (joint tenancy—wife set the fire—her arson not imputable to innocent husband and co-insured. If the insurance company intended such a result, 'it should have made the terms of the policy more express in this regard.');

*Hildebrand v. Holyoke Mut. Fire Ins. Co.* (Me.1978), 386 A.2d 329, (innocent wife apparently allowed full recovery—co-insured husband set the fire—public policy against benefiting wrongdoer not violated by payment of mortgage or wife's recovery);

*Winter v. Aetna Cas. & Sur. Co.* (1978), 96 Misc.2d 497, 409 N.Y.S.2d 85, (entireties property—misconduct of husband not attributable to innocent wife). *See also Mercantile Trust Co. v. New York Underwriters Co.* (7th Cir. 1967), 376 F.2d 502, 24 A.L.R.3d 443, (trustees' full recovery not barred by life tenants' burning of premises and filing fraudulent proof of loss—public policy prohibiting profit from wrongdoing vindicated by holding proceeds in trust for remaindermen);

*Simon v. Security Ins. Co.* (1973), 390 Mich. 72, 210 N.W.2d 322, (involving co-insured spouses and a loss of personal property of the wife while the parties were separated and a divorce was pending, husband was the suspected burglar. Trial court's instruction that one spouse cannot steal from the other and that misconduct of one was attributable to the other reversed on appeal, finding such views to be 'harsh, impractical and outdated'). *But see Morgan v. Cincinnati Ins. Co.* (1979), 91 Mich. App. 49, 282 N.W.2d 829, (following an 1884 precedent barring recovery for a loss of entireties property 'with extreme reluctance' and urging the Michigan Supreme Court to take '... a further and fresh look at this most perplexing problem toward the end that an innocent tenant by the entireties would not be punished by the other's willful and wrongful acts').[2] *See generally* Annot., '*Fraud, False Swearing, or Other Misconduct of Insured as Barring Recovery on Property Insurance by Innocent Coinsured.*' 24 A.L.R.3d 450 (1969).

## CONCLUSION

The cases following *Howell* produce a more just result, one which is more in keeping with the temper of the times. The original Indiana version of the 'Married Women's Act' abolishing coverture dates from 1923, IC 31–1–9–2. We avoid punishing the innocent spouse who frequently has already been the victim of the wrongdoer's misconduct.

■ In the instant case, there is no policy language which the defendant can rely upon to support an exclusion. It is not a matter of construction, the exclusion being one which is only 'implied.' It is clear to me that a person in Joann Liggett's situation would objectively and reasonably expect to have coverage for the fire loss which she sustained and that such coverage must not be subject to defeat by an 'implied' exception which is nowhere stated in her insurance policy.

The reasonable expectation of the innocent insured that coverage will exist must be vindicated.

Even in Indiana, we buy insurance to be indemnified when we have suffered a loss. Under Indiana law, insurance policies must be construed so as to effectuate indemnification to the insured or the beneficiary. Where any reasonable construction can be placed on a policy that will prevent the defeat of the insured's indemnification for a loss covered by general language, that construction will be given. *Masonic Acc. Ins. Co. v. Jackson* (1929), 200 Ind. 472, 482, 164 N.E. 628.

The law's legitimate concern that a wrongdoer not profit by his wrong is not a factor in this case and there is no reason to deny the innocent plaintiff a full recovery, (a different rule may need to be fashioned where the guilty spouse survives). The

---

2. In fact, the Michigan Supreme Court did so on further appeal and reversed the denial of liability. 411 Mich. 267, 307 N.W.2d 53 (1981).

plaintiff here is the sole owner of the real estate and its improvements as the surviving entireties tenant. She is also the owner of all of the personal property as the heir at law of her deceased spouse. The entire claim for additional living expenses is hers. More correctly stated, she is the sole surviving insured, owning the entire claim for indemnification against the defendant.

The law does not require us to foresee the irrational or criminal acts of others. We insure to protect against their unhappy results. From the point of view of Joann Liggett, the loss of her husband and her house was fortuitous."

We, therefore, affirm the judgment allowing full recovery under the policy.

Affirmed.

HOFFMAN, P. J., concurs.

STATON, J., concurs and files separate opinion.

STATON, Judge, concurring.

The appellant, American Economy Insurance Company, asks this Court to review the following issue:

> Does the intentional burning of a house, which is held by husband and wife in a tenancy by the entireties, by one spouse bar the recovery by the innocent spouse from receiving the proceeds of a fire insurance policy which names both spouses as the insured?

The majority, by incorporating the opinion of the trial court judge as the opinion of this Court, resolves this issue in favor of the innocent spouse. I agree. However, the trial court opinion of Judge Beamer, who should be commended for his extensive survey of the law on this issue, is hardly conducive for adoption *in toto* as the opinion of this Court.[1] To say that Indiana will follow

the precedent of *Howell v. Ohio Casualty Insurance Co.* (1973), 124 N.J.Super. 414, 307 A.2d 142, *modified* (App.Div.1974), 130 N.J.Super. 350, 327 A.2d 240, and its progeny is to leave Indiana courts floundering in the quagmire of case law on insurance fraud. The cases cited in the majority opinion which permit the innocent spouse to recover the insurance proceeds speak with little unanimity in the rationale for reaching their conclusions and with an even more pronounced difference of opinions in the measure of damages to be awarded to the innocent spouse. The majority opinion, by incorporating these cases into the body of Indiana law, fails to develop an adequate framework of analysis for the issue of the present case and the multitude of correlative issues. I believe this issue should be resolved by applying the traditional rules of construction for insurance cases. The majority opinion touches upon these rules only tangentially.

A reiteration of the basic tenets of insurance law would assist in analyzing the insurance policy executed by the Liggetts and American Economy. An insurance policy is a contract between the insurer and the insured, and as such, the law of contracts controls their legal relationship. *Cincinnati Insurance Co. v. Mallon* (1980), Ind.App., 409 N.E.2d 1100, 1103; *Stockberger v. Meridian Mutual Insurance Co.* (1979), Ind. App., 395 N.E.2d 1272, 1277; *American States Insurance Co. v. Aetna Life & Casualty Co.* (1978), Ind.App., 379 N.E.2d 510, 516. The objective of this Court is to ascertain and enforce the parties' intent as manifested in the insurance contract. *Stockberger, supra*, 395 N.E.2d at 1277; *Meridian Mutual Insurance Co. v. Gulf Insurance Co.* (1977), Ind.App., 366 N.E.2d 190, 192. This Court's objective must be promoted with the following considerations in mind:

---

1. I encourage trial court judges to research issues of law as thoroughly as Judge Beamer has done in the present case. A well-researched trial court opinion informs litigants and the reviewing court of the legal basis for the trial court's judgment. However, the verbatim incorporation of a well-researched trial court opinion as the opinion of the appellate court should be done with caution because

such a practice has certain pitfalls, such as the citation of a case that has been reversed by a higher court since the writing of the trial court opinion. *E. g. Morgan v. Cincinnati Insurance Co.* (1979), 91 Mich.App. 48, 282 N.W.2d 829, *rev'd* (1981), 411 Mich. 267, 307 N.W.2d 53. Fortunately, the majority has avoided this particular pitfall by detecting and noting the reversal of the Court of Appeals' decision in *Morgan*.

"An insurance contract is prepared and drafted solely by the insurance company subject to no real bargaining and, thus, is a contract of adhesion ... Therefore, when a court is required to interpret an insurance contract, the ambiguities will be construed against the insurer and in favor of the insured ... An insurance contract is ambiguous if reasonably intelligent men, upon reading the contract, would honestly differ as to its meaning...." (citations omitted)

*Travelers Indemnity Co. v. Armstrong* (1979), Ind.App., 384 N.E.2d 607, 613 (transfer pending).

An insurance contract must be construed to prevent the defeat of the insured's indemnification for a loss when the general language of the contract is susceptible to two equally fair constructions. *Freeman v. Commonwealth Life Insurance Co. of Louisville* (1971), 149 Ind.App. 211, 217, n. 6, 271 N.E.2d 177, 181, n. 6, *transfer denied* (1972), 259 Ind. 237, 286 N.E.2d 396; *Richmond Insurance Co. of New York v. Boetticher* (1938), 105 Ind.App. 558, 562, 12 N.E.2d 1005, 1007. An exclusion in an insurance contract will be given effect only if it clearly and unmistakably brings within its scope the particular act or omission that will effectuate the provision. *Huntington Mutual Insurance Co. v. Walker* (1979), Ind.App., 392 N.E.2d 1182, 1185; *American States Insurance Co. v. Aetna Life & Casualty Co., supra,* 379 N.E.2d at 516–17. An insurer may limit its liability for a particular act or omission so long as the exclusion is plainly expressed in the insurance contract and it does not contravene statutory authority or public policy. *Cincinnati Insurance Co. v. Mallon, supra,* 409 N.E.2d at 1103.

American Economy denies liability for Mrs. Liggett's loss by relying upon the following provision of the insurance contract:

"This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

This standard policy provision operates to void the insurance contract only when "the insured" attempts to defraud the insurer by submitting a proof of loss form that states "the insured" did nothing to increase the risk or to cause the loss for which indemnification is sought. The critical issue thus becomes what meaning should be ascribed to the words "the insured."

The words "the insured" are susceptible to two reasonable constructions: (1) Mr. and Mrs. Liggett as one collective entity, or (2) Mr. Liggett and Mrs. Liggett as independent entities who insured coextensive interests in the same piece of property. The insurance contract itself provides little assistance in determining which construction should be adopted. It denominates "LIGGETT DUWAINE & JOANN" as the "INSURED" and provides the following definition:

"(a) 'Insured' means

(1) the Named Insured stated in the Declarations of this policy;

(2) if residents of the Named Insured's household, his spouse, the relatives of either, and any other person in the care of any insured: ..."

Keeping in mind that Indiana insurance law requires an ambiguous provision of an insurance contract to be strictly construed against the insurer, and if the provision is subject to multiple constructions, it should be construed to provide coverage to the insured; this Court should conclude that the insurance contract in the present case should be construed so as to award the insurance proceeds to the innocent spouse, Mrs. Liggett. The construction of the words "the insured" must be limited to the insured person who attempted to defraud the insurer. Such a construction was given to similar provisions in cases from other jurisdictions. In *Ryan v. MFA Mutual Insurance Co.* (1980), Tenn.App., 610 S.W.2d 428, *cert. denied* by Tenn.S.Ct., the court stated:

"We find that a reasonable person, reading the provisions in the policy at issue here which refer to fraud of 'the

insured,' and neglect of 'the insured,' etc. would conclude that if *an* insured was guilty of fraud or neglect or increasing of hazard to property, then *he or she* may not recover under the policy. If the company wanted to assure its position, i. e. that misconduct of any insured would bar recovery by any other insured, it might have made it clear and unambiguous in the policy and it might have informed the prospective applicants for insurance of this position from the start. It did not do so in this case and it is bound by the language *it* unilaterally drafted into the 'contract' of insurance between the parties." (emphasis original)

*Ryan, supra,* 610 S.W.2d at 437. In *Morgan v. Cincinnati Insurance Co.* (1981), 411 Mich. 267, 307 N.W.2d 53, the Michigan Supreme Court, addressing the effect of a contractual provision identical to the one in the present case, observed:

"The standard fire insurance policy prescribed by statute provides:

'This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.' M.C.L. § 500.2832; M.S.A. 24.12832.

"The insurer in this case would have us read this provision as if it stated '[t]his entire policy shall be void if * * * any person insured' has committed fraud. We believe such a reading is unwarranted, and hold that the provision voiding the policy in the event of fraud by 'the insured' is to be read as having application only to the insured who committed the fraud and makes claim under the policy. The provision has no application to any other person described in the policy as an insured.

"To adopt the reading of the insurer would require ascribing to the Legislature an intent to impose a mutual obligation of suretyship on each of several persons insured: that each insured must not only undertake to forbear from fraud himself, but must also undertake to prevent each of the other persons insured from engaging in fraud on pain of losing all interests under the policy. Such an intent is unlikely; as this case aptly illustrates, an insured often has no control over the conduct of others."

*Morgan, supra,* 307 N.W.2d at 54–55. Similar conclusions on the construction of the words "the insured" were reached in cases cited in the majority opinion. *See, Steigler v. Insurance Company of North America* (1978), Del., 384 A.2d 398; *Economy Fire and Casualty Co. v. Warren* (1979), 71 Ill. App.3d 625, 28 Ill.Dec. 194, 390 N.E.2d 361; *Hildebrand v. Holyoke Mutual Fire Insurance Co.* (1978), Me., 386 A.2d 329. I find the Court's observations in *Hildebrand, supra,* which involved a contract provision identical to the one in the present case, to succinctly state the rule that this Court should adopt:

"We construe the term 'insured' in the first above quoted clause of the policy to mean a specific insured, namely, the insured who (1) is responsible for causing the loss and (2) is seeking to recover under the policy ... We therefore conclude that the instant policy allows recovery by the 'Named Insured' for the loss despite the fact that it resulted from the intentional act of another 'insured.'

"We reach this result irrespective of whether the interests of the plaintiff and her husband in the destroyed property are deemed to be joint or several." (citations and footnote omitted)

*Hildebrand, supra,* 386 A.2d at 331. Those cases that resolve the issue of the innocent spouse's rights in favor of the insurer because the destroyed property was held in a tenancy by the entireties, *e. g., Rockingham Mutual Insurance Co. v. Hummel* (1979), 219 Va. 803, 250 S.E.2d 774, and *Short v. Oklahoma Farmers Union Insurance Co.* (Okl.1980), 619 P.2d 588, have employed the anachronistic common law concept of the unity of the husband and wife to defeat the contractual rights of a party to an insurance contract. This line of reasoning has

been subjected to extensive criticism. *See, Note,* "Spouse's Fraud as a Bar to Insurance Recovery," 21 *Wm. & Mary L.Rev.* 543 (1979). One court has circumvented the tenancy by the entireties argument by treating the insurance proceeds from intentionally destroyed entireties property as divisible personal property to which the innocent party is entitled. *Lovell v. Rowan Mutual Fire Insurance Co.* (1981), 302 N.C. 150, 274 S.E.2d 170. It is evident that relying upon property law to avoid liability under an insurance contract is a practice that is being looked upon by an increasing number of courts with disfavor. The innocent spouse's rights must be determined by resorting to the traditional tenets of contract law.

The insurance contract failed to specifically delineate an exclusion of liability for the loss of the insured property under the circumstances of the present case. The wrongdoing of the husband cannot be imputed to the wife under the terms of the contract. She is entitled to recover the insurance proceeds.

It must be emphasized that the holding of this Court should be limited to the facts of the present case. The amount of damages recoverable by the innocent spouse if the wrongdoing spouse survives the incendiary act may need to be limited to prevent the wrongdoer from benefitting from the wrongful act. Furthermore, this Court's holding may have precedential value for similar insurance cases involving parties with legal relationships other than husband and wife, such as partners, corporate officers, mortgagees, landlord-tenant, and joint venturers to name a few. However, this Court's holding should not be construed as a hard and fast rule applicable to all insurance cases involving different legal relationships. It is important to remember that the resolution of such cases must turn on the language contained in the insurance contracts and the contract law to be applied to that language.