# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT NASHVILLE
_____

|  |  |  |
|---|---|---|
| **RICHARD E. FINCH,** | ) | Bedford County Circuit Court |
|  | ) | No. 6616 |
| Plaintiff/Appellant. | ) |  |
|  | ) |  |
| VS. | ) | C. A. NO. 01A01-9607-CV-00342 |
|  | ) |  |
| **TENNESSEE FARMERS MUTUAL** | ) |  |
| **INSURANCE COMPANY**, | ) |  |
|  | ) |  |
| Defendant/Appellee. | ) |  |
|  | ) |  |

**FILED**

**March 5, 1997**
_____

**Cecil W. Crowson**
**Appellate Court Clerk**

_____

From the Circuit Court of Bedford County at Shelbyville.
**Honorable Lee Russell, Judge**

**William J. Abernathy, Jr.**,
LEITNER, MOFFITT, WILLIAMS, DOOLEY and NAPOLITAN, PLLC, Nashville, Tennessee
Attorney for Plaintiff/Appellant.


**John T. Bobo**,
**Charles L. Rich**,
BOBO, HUNT & BOBO, Shelbyville, Tennessee
Attorneys for Defendant/Appellee.

OPINION FILED:

**REVERSED AND REMANDED**


**FARMER, J.**


**CRAWFORD, P.J., W.S.** (Concurs)
**HIGHERS, J.** : (Concurs)

This appeal addresses the issue of whether the "innocent co-insured doctrine," first recognized by our supreme court in *Spence v. Allstate Insurance Co.*, 883 S.W.2d 586 (Tenn. 1994), should be extended so as to permit the appellant, Richard E. Finch (Finch) to recover under an insurance policy, issued by the appellee, Tennessee Farmers Mutual Insurance Company (TFMIC), for loss to property held *jointly* with his co-insured spouse whose intentional acts caused the loss. The trial court, interpreting Tennessee case law to disallow such recovery primarily "on the basis of policy considerations," entered a summary judgment for TFMIC.[1] Finch challenges the correctness of that decision. For reasons to be set forth, we reverse and remand.

The following facts are undisputed: TFMIC renewed a property owners' insurance policy to named insureds "Richard E. Finch and wife, Willa I. Finch" for policy period August 1, 1991 to August 1, 1992.[2] The policy insured a 70 acre tract of land with a dwelling house and other farm structures, owned by the named insureds as tenants by the entirety,[3] and personal property against loss by fire. The limits of liability were $30,000 for the house, $18,000 for personal property and $15,000 for each chicken barn.

In May 1991, Willa Finch filed for divorce and the couple separated in July. On December 27/28, 1991, with the policy in effect, Willa Finch intentionally burned the house and its contents. Finch and his wife were divorced on March 20, 1992. Pursuant to a property settlement agreement, approved by the divorce court, Ms. Finch quitclaimed her interest in the subject realty to Finch and waived any interest in insurance proceeds possibly recovered by Finch as a result of the fire.

Finch filed the present action after TFMIC declined payment of his claim because of Ms. Finch's arson and the insurance carrier's interpretation of "Tennessee Law regarding innocent spouse claims." In his complaint, Finch denies any participation in setting the fire, any prior or concurrent knowledge of Ms. Finch's actions or "any other act or neglect that led to the house fire." For answer, TFMIC denied all material allegations and asserted the affirmative defense that the

---

[1]The summary judgment was entered September 27, 1993.

[2]The policy was originally issued by TFMIC in 1984.

[3]The record indicates that the named insureds purchased the property in August 1977. The sellers were mortgagees of the property.

complaint failed to state a claim upon which relief can be granted. The parties stipulated that Ms. Finch intentionally burned the premises; that Mr. Finch timely filed a proof of loss claim; that Ms. Finch refused to file a claim for the house fire; and that only two items of personalty lost in the fire were owned by Finch individually,[4] with all other personalty and realty being owned jointly by Willa and Richard Finch.

The matter was argued before the trial court as a motion for summary judgment. For purposes of said motion, the court expressly assumed that Finch was not personally involved in causing the fire. The trial court concluded that TFMIC was entitled to a summary judgment "in regard to the claims . . . related to jointly owned property"[5] and held: "[f]ollowing the lead of our own intermediate appellate court, this trial court concerns itself with the policy considerations rather than the policy language and declines to extend the holding in [*Ryan v. MFA Mutual Insurance Co.*, 610 S.W.2d 428 (Tenn. App. 1980)] to jointly owned property."[6]

As noted, the issue before us is whether the trial court was correct in entering a summary judgment for TFMIC upon finding, as a matter of law, that Finch is not entitled to recover under the insurance policy for loss to jointly owned property. We begin our analysis with a discussion of the "innocent co-insured doctrine" as it presently exists in Tennessee. The doctrine is defined by our supreme court in *Spence v. Allstate* upon noting its original adoption by the court of appeals in *Ryan*. In reference thereto, *Spence* states:

> After conducting an extensive jurisdictional survey of the law on this issue, [*Ryan*] determined that the traditional rule--in which wrongdoing by an insured served as a complete bar to recovery by an innocent co-insured--had been supplanted by a rule allowing the innocent coinsured to recover if: (1) the policy language governing the rights of an innocent co-insured was ambiguous from the standpoint of the reasonable person purchasing insurance; and (2) if the innocent co-insured could show that he had a sole or separate interest in the property claimed in the proof of the loss.

---

[4]TFMIC does not dispute coverage for these individually owned items.

[5]The matter proceeded to further hearing regarding Appellant's claim that he is entitled to be subrogated to the interests of the mortgagees. This issue and the trial court's ruling thereon is not before us on appeal.

[6]*Ryan*, along with the unreported appellate court decisions which the trial court considered, will be discussed in more detail hereinafter.

*Spence*, 883 S.W.2d at 590-91. *Spence* upheld the doctrine as set forth in *Ryan*. Notably, the court was not directly confronted with the issue now before us. There, the only property for which the innocent co-insured sought to collect under the policy was determined to be his sole and separate property.[7] *Id*. at 593-94.

The following provisions are included in the policy of insurance issued Finch and wife, Willa by TFMIC:

### DEFINITIONS USED THROUGHOUT THIS POLICY

. . . .

"**You**" and "**your**" means the Policyholder named in the Declarations and spouse if living in the same household.

. . . .

"**Insured Person**" means:

(a) **you**;

(b) **your** spouse or the relatives of either residing in **your** household; and

. . . .

"**Insured premises**" means:

(a) the **farm premises** or **residence premises** described in declarations.

. . . .

### SECTION I

. . . .

EXCLUSIONS:

**We** do not cover loss resulting directly or indirectly from:

. . . .

8. An action by or at the direction of an **insured person** committed with the intent to cause a loss. This exclusion does not apply to loss sustained by an **insured person** who does not participate in such

---

[7]Nor did the court in *Ryan* have need to consider the issue. There, the court specifically found that the innocent spouse sought recovery "only for items he claims belong to him." *Ryan*, 610 S.W.2d at 437.

action nor have knowledge of such action.

. . . .

GENERAL POLICY CONDITIONS APPLYING TO SECTION I
AND SECTION II

. . . .

4. **Concealment Or Fraud**

This entire policy is void as to the **insured**, if an **insured person** has intentionally concealed or misrepresented any material fact or circumstances relating to this insurance, or acted fraudulently or made false statements relating to this insurance.

It is not disputed that the actions of Willa Finch in burning the insured property were intentional. Loss of this nature is specifically addressed in Exclusion 8. Under this provision, coverage is not provided for loss resulting directly or indirectly from such intentional acts as those of Ms. Finch, except for that "loss sustained by an insured person who does not participate in such action nor have knowledge of such action." We find the unequivocal language of this "exception," or severability clause as it is sometimes referred, to afford coverage to Mr. Finch if in fact he did not participate in or have knowledge of his former wife's actions in burning the property. However, when reading the "Concealment Or Fraud" provision, we find a contractual intent to deny coverage to both insureds for the fraudulent acts of "an insured person." This language, however, merely serves to create an ambiguity in the policy regarding an innocent co-insured's rights when read with the provisions under Exclusion 8. As it is well settled that ambiguous provisions of an insurance policy are to be construed against its drafter and in favor of the insured, *see, e.g., **Tata v. Nichols***, 848 S.W.2d 649, 650 (Tenn. 1993); ***Ryan***, 610 S.W.2d at 437; we interpret the foregoing policy to afford coverage to Mr. Finch if in fact he did not participate in or have knowledge of his former wife's arson.

This does not end our inquiry, however, as we must now determine to what extent coverage exists for Mr. Finch. TFMIC does not dispute the unambiguity of the language in Exclusion 8, instead maintaining that the "unambiguous" language is "wholly consistent with the 'innocent co-insured doctrine' if applied." TFMIC reasons that from the standpoint of the reasonable person purchasing insurance, the provision could only apply to property owned solely and separately

by an innocent co-insured because the co-insured intentionally causing the loss cannot recover his/her interest in the property. To this extent, we cannot agree. We find nothing in the language under Exclusion 8 to even remotely suggest a limitation on the loss sustained by an innocent co-insured to only that property in which he/she maintains a sole or separate interest. We do not find that a "reasonable person purchasing insurance" would construe the provision in such manner. If it was the intent of TFMIC to limit its coverage in the way suggested, it could have easily done so by using clear and precise language to that effect. Thus, insofar as the contract of insurance itself is concerned, we conclude that coverage has not been excluded for loss to jointly held property.

We must yet determine whether there exist overriding concerns of public policy which warrant denying recovery for such loss. Quite obviously, the major concerns in this regard are collusion by the co-insureds to perpetrate a fraud upon the insurance company and preventing one from profiting indirectly from that which he is not entitled to profit directly. The trial court reviewed three unreported opinions rendered by the court of appeals since *Ryan* to conclude that the innocent co-insured doctrine does not extend to jointly held property on grounds of public policy. The first of such cases, *Tennessee Farmers Mutual Insurance Co. v. Billings*, 6 TAM 36-8 (Tenn. App. filed July 22, 1981), *aff'd* 7 TAM 40-4, C.R.O., refused to extend the doctrine for the policy reasons expressed above, noting also the common law rule of unity of husband and wife which, according to the court, would render an insurance carrier's subrogated cause of action "meaningless."[8]

The second case, *Snowden v. State Farm Fire & Casualty Co.*, 8 TAM 29-17 (Tenn. App. filed June 8, 1983), involves a similar factual pattern to the case at bar. There, husband and wife owned the insured home as tenants by the entirety; all personal property was owned jointly. The couple separated prior to a fire to their home, which a jury determined was the result of the husband's arson, and were divorced subsequent thereto. Unlike the present case, however, the divorce decree awarded the innocent wife only one-half of the fire insurance proceeds. Both husband and wife filed suit to recover under the policy. In denying recovery, the court cited *Billings* for its public policy concerns, but also relied upon the express provisions of the insurance contract to

---

[8]As correctly pointed out by Appellant, the doctrine of interspousal tort immunity was later abolished in *Davis v. Davis*, 657 S.W.2d 753 (Tenn. 1983).

support its decision. The court referred to the policy's "concealment or fraud" provision, which voided the entire policy for "any" insured's intentional concealment or misrepresentation of any material fact relating to the insurance. The court found that husband's arson followed by a claim for recovery was tantamount to fraud as contemplated by the contract.

Finally, in *Adams v. Aetna Casualty & Surety Co.*, 10 TAM 52-2 (Tenn. App. filed Nov. 19, 1985) (Franks, J., dissenting), *appeal denied*, the innocent wife was denied recovery for loss to the couple's home owned as tenants by the entirety. The court cited *Ryan* along with the unreported decisions above-mentioned, underscoring the position that to allow such recovery would encourage the practice of fraud upon the insurance carrier.

In a dissenting opinion to *Adams*, Judge Franks recognized a trend among other jurisdictions, as did the trial court in the present case, toward allowing innocent co-insureds to recover for the loss of jointly owned property. In rejecting the majority's view, Judge Franks states:

> The insurance company contends, and the majority agrees, that abandonment of the traditional rule will encourage collusion between husband and wife to perpetuate fraud upon insurors. Allowing a truly innocent insured spouse to recover would not encourage fraud. As one court has noted, recovery should only be allowed "where . . . there has been no finding that the insured directly set the fire, had knowledge and authorized its setting or later ratified the wrongful act." St. Paul Fire and Marine Ins. Co. v. Molloy, 433 A.2d 1135 (Md. App. 1981). Proof of fraud on the part of the co-insured would deny the co-insured recovery; absent such proof, the public policy rationale implicit in the "old dominant rule" disappears.

Judge Franks noted also that the majority's ruling, in effect, holds the innocent spouse responsible for the other spouse's crime and, thus, "contravenes the general rule that a spouse is not vicariously responsible for the criminal acts of his or her spouse."

The dissent makes specific reference to a decision of the Appellate Division of the New Jersey Superior Court, *Howell v. Ohio Casualty Insurance Co.*, 327 A.2d 240 (N.J. Super. Ct. App. Div. 1974). *Howell* allows an innocent wife to recover under a homeowner's insurance policy for loss to jointly held personal property destroyed by the husband's arson. The insured premises

was owned by the husband and wife as tenants by the entirety.[9]  The policy designated the named insured as the husband "and/or" the wife.  After setting the fire, the husband committed suicide. *Howell*, 327 A.2d at 241.

*Howell* reasons as follows:

> We hold that the trial court correctly determined that the fraud of the husband was no bar to recovery under the policy by the innocent wife.  However, we reach this result irrespective of whether the interests of the wife and husband in the tenancy by the entirety, in the personal property, or in the contract rights under the policy are deemed to be joint or several.  The significant factor is that the responsibility or liability for the fraud -- here, the arson -- is several and separate rather than joint, and the husband's fraud cannot be attributed or imputed to the wife who is not implicated therein.  Accordingly, the fraud of the co-insured husband does not void the policy as to plaintiff wife.

*Id*. at 242.  Interestingly, *Howell* found its conclusion "supported" by the terms of the insurance policy, including what the court considered the ambiguous phrase "and/or," but did not deem such provisions controlling.  *Id*.

An identical question as that now confronting us was posed to the Supreme Court of Delaware in *Steigler v. Insurance Co. of North America*, 384 A.2d 398, 399 (Del. 1978).  In a case of first impression, the court considered the traditional arguments advanced for denying recovery: the "legal oneness" of the husband and wife relationship and the unity and indivisibility of property held by tenants by the entireties.  *Steigler*, 384 A.2d at 400.  The court acknowledged that recovery is generally denied on the ground that spouses who hold joint interests in insured property have a joint obligation to refrain from fraud and, thus, the fraud of one necessarily becomes the fraud of the other.  *Steigler* instead chose to treat the matter as purely "a contract dispute," focusing on the law pertaining thereto rather than that which governs "land titles."  *Id*. at 399-400.  Relying then upon principles of contract law, the court determined the policy's fraud provision ambiguous and construed it in favor of the innocent insured to afford coverage.  The court held:

---

[9]*Howell* indicates that the insuror paid for repairs to the burned home because an innocent mortgagee was involved, but had refused to pay the wife for personal property loss.  *Howell*, 327 A.2d at 241.

> In our judgment, the contract in this case can and should be read to accord with the reasonable expectations of an ordinary purchaser, that is, [the innocent spouse] had an interest in the property, the policy named her without qualification as one of the persons insured and she should not be barred from recovering under the policy by the fraud of the other co-tenant.

*Id*. at 401.[10]  The court described the "oneness" theory urged by the defendant carrier as rather "quaint" in modern day and felt it overridden by other "principles at stake." *Id*.  One being the general rule that a spouse is not vicariously liable for the criminal acts of the other merely because of the existence of the marital relationship.  *Id*. at 401-02.  Thus, *Steigler* preferred to align itself with the reasoning of *Howell*, finding it "to represent both a more modern analysis of the problem and to produce a fairer result." *Id*. at 402.  *Steigler* permitted a recovery for the innocent wife of one-half of the damages within policy limits, inasmuch as the rights of the husband and wife were viewed as separate under the contract.  *Id*.

A like decision was rendered by the Supreme Court of Texas in *Kulubis v. Texas Farm Bureau Underwriters Insurance Co.*, 706 S.W.2d 953 (Tex. 1986).  There, the court declined to follow prior decision to hold that the illegal destruction of jointly owned property by one co-insured does not bar recovery under the insurance policy by an innocent co-insured.  *Kulubis*, 706 S.W.2d at 955.  The court observed that prior rule disallowing such recovery was premised on public policy that a wrongdoer not benefit from his wrongdoing and on the notion that the innocent co-insured was mutually obligated under the insurance contract.  *Id*.  However, in examining the various other expressed policy considerations -- prevention of fraud upon the insurance company; prevention of unjust enrichment by the insurance company; refusal to impute the criminal acts of the wrongdoer to an innocent victim; and requiring an innocent co-insured to recover based upon his/her reasonable expectations -- *Kulubis* concluded that these concerns are best protected by allowing recovery to the innocent co-insured if the trial court determines that he/she is indeed innocent.  *Id*.  *Kulubis* reasons:

> A trial court is uniquely situated to make the determination of the co-insured's innocence, and, unless there is a finding of lack of innocence, the co-insured shall be permitted to recover.

---

[10]The fraud provision in the policy rendered the contract void "in case of any fraud . . . by the insured relating thereto." *Steigler*, 384 A.2d at 399 n. 1.  It was not disputed that the husband committed fraud within the meaning of the policy by deliberately burning the home. *Id*. at 399.

> We hold that this test will best protect the insurance company from fraud while assuring that the insurance company will not be unjustly enriched. It will also permit an innocent victim whose property has been destroyed to collect under an insurance policy for a loss reasonably expected to be covered. This test also avoids the imputation of criminal action to an innocent victim.

*Id*. *Kulubis* allowed the innocent spouse to recover one-half of the stipulated amount of loss. *Id*.

Recovery for the innocent spouse was also recognized by the Court of Appeals of Indiana in *American Economy Insurance Co. v. Liggett*, 426 N.E.2d 136 (Ind. Ct. App. 1981). That court likewise dispensed with the "oneness" theory by noting that spouses are not held vicariously liable for torts merely because of the marital relationship. *Liggett*, 426 N.E.2d at 138-39. As to the claimed indivisibility of a spousal interest in entireties' property, the court stated:

> The legal fiction of the entireties' estate in real estate is designed for the protection of the spouses and the marriage. It was initially designed to prevent the individual creditors of either spouse from taking the marital home. The courts generally, and divorce courts in particular, find no difficulty in dividing an entireties estate. I find it a perversion of this legal fiction, designed to protect the spouses' rights and marital property, to use it to destroy the property rights of an innocent spouse. . . .
>
> . . . . It is not an undivided interest in real estate which is an issue in these cases but a claim or chose in action against an insurance company; a right to be reimbursed for the loss which has been sustained.

*Id*. at 140.

*Liggett* further held that valid public policy which prohibits a guilty party from profiting from his wrongdoing is "easily vindicated" by barring any recovery to the "living" guilty spouse and permitting the innocent spouse recovery of one-half of the insured loss within policy limits, and suggested that "[w]here there is some prospect that the guilty party might benefit, even indirectly, a careful factual analysis can be made by the trial court to determine whether that prospect exists and to protect against it."[11] *Id*. Finally, the court commented that since the decision rendered

---

[11] *Liggett* noted that such was an impossibility there, as the guilty spouse was dead. *Liggett*, 426 N.E.2d at 140. Thus, the court chose to award the innocent spouse a "full recovery under the policy" as the "sole surviving insured, owning the entire claim for indemnification

by the State of New Jersey in ***Howell***, a majority of the jurisdictions considering the issue as one of first impression had followed or expanded upon its principles. ***Id***. at 143.

We make final observation here of one such case considering the issue on first impression, ***McCracken v. Government Employees Insurance Co.***, 325 S.E.2d 62 (S.C. 1985), as the decision we reach herein is in accord. In ***McCracken***, the alternate approaches taken by the jurisdictions considering the issue were elucidated as follows: some courts deny recovery where the interests in the property are nonseverable; others emphasize whether the obligations of the co-insured as set forth in the insurance contract are joint or severable (the court cited ***Ryan*** here as supporting this position); and a third group focuses upon whether the liability for the fraudulent act can be considered separate or joint (***Howell***). ***McCracken***, 325 S.E.2d at 63-64. The South Carolina Supreme Court then concluded that the public policy of its state was not contravened in allowing an innocent spouse to recover inasmuch as "the unity of spouses and the disability of coverture as affecting litigation [had] been abolished," and held:

> We decline to make any distinction between property which is held jointly or severably and hold that in the absence of any statute or specific policy language denying coverage to a co-insured for the arson of another co-insured, the innocent co-insured shall be entitled to recover his or her share of the insurance proceeds.

***Id***. ***Accord McGory v. Allstate Ins. Co.***, 527 So.2d 632 (Miss. 1988). We agree with the holding in ***McCracken*** and adopt it as our own.

We are persuaded that the better reasoned approach is to permit an innocent co-insured to recover under an insurance policy for the loss to jointly owned property, provided the specific language of the insurance contract does not expressly exclude such coverage so that the reasonable person purchasing insurance would expect to be covered in the event of property loss caused intentionally by a co-insured. We note that in the case at bar, the possibility of an indirect benefit to the guilty insured has been greatly minimized by the Finch divorce and Ms. Finch's relinquishment of any interest in the insured property or insurance proceeds. We are not unmindful,

_____

against the [carrier]." ***Id***. at 144-45. The court noted, however, that "a different rule may need to be fashioned where the guilty spouse survives." ***Id***. at 144.

however, of the possibility under other factual situations. Taking our lead from *Liggett* and *Kulubis*, we are of the opinion that this concern can best be addressed by the trial court in making a factual determination as to the true "innocence" of the co-insured. Under those circumstances where the potential for deception is clearly found to exist, recovery should be denied.

The insurance contract in question does not expressly exclude coverage to an innocent co-insured for loss to jointly held property. Thus, it is within the reasonable expectation of Finch that he would be covered under the policy for his loss. We hold that he is therefore entitled to coverage under the policy for his loss to jointly owned property, provided his "innocence" is proven in the trial court. Consequently, we remand this matter to the trial court for the taking of evidence to determine whether Finch is an innocent co-insured under the policy. If established, the trial court should additionally hear evidence on damages.

As to the amount of damages recoverable, we find guidance from the Michigan Court of Appeals in *Lewis v. Homeowners Insurance Co.*, 432 N.W.2d 334 (Mich. Ct. App. 1988), from which we quote as follows:

> The sole issue raised in this appeal is a legal one: whether an innocent coinsured spouse, who holds property as a tenant by the entirety, may recover insurance proceeds of more than one-half the amount of property damage, but not exceeding policy limits, caused by the wrongful acts of the other coinsured spouse. . . .
>
> The vast majority of jurisdictions which have addressed this issue, and which have allowed any recovery at all, have held that the innocent spouse may only recover one-half of the insurance proceeds, up to the policy limits. See, e.g., *Nationwide Mut Fire Ins. Co. v. Pittman*, 82 N.C.App. 756, 348 S.E.2d 350 (1986); *Maravich v. Aetna Life & Casualty Co.*, 350 Pa.Super. 392, 504 A.2d 896 (1986); *Republic Ins. Co. v. Jernigan*, 719 P.2d 331, 334 (Colo.App. 1985); *Krupp v. Aetna Life & Casualty Co.*, 103 A.D.2d 252, 479 N.Y.S.2d 992 (1984); *Fuston v. Nat'l Mut. Ins. Co.*, 440 N.E.2d 751 (Ind.App.1982); *Commercial Union Ins. Co. v. State Farm Fire & Casualty Co.*, 546 F.Supp. 543 (D.Colo. 1982); *St. Paul Fire & Marine Ins. Co. v. Molloy*, 291 Md. 139, 433 A.2d 1135 (1981); *Lovell v. Rowan Mut. Fire Ins. Co.*, 302 N.C. 150, 274 S.E.2d 170 (1981); *Economy Fire & Casualty Co. v. Warren*, 71 Ill.App.3d 625, 28 Ill.Dec. 194, 390 N.E.2d 361 (1979); *Winter v. Aetna Casualty & Surety Co.*, 96 Misc.2d 497, 409 N.Y.S.2d 85 (1978); *Steigler v. Ins. Co. of North America*, 384 A.2d 398 (Del., 1978). . . .
>
> Unfortunately, most of the above-cited cases, while adequately explaining why an innocent coinsured should not be precluded from any recovery, have been deficient in explaining why

the recovery should be limited to one-half the property damage (or the amount of the policy, whichever is less). However, in *Molloy, supra*, the Maryland Court of Appeals gave the following explanation, which we find persuasive:

> "Since '[w]e have regarded the rights of husband and wife [to be] separate under the contract, . . . both logic and justice require that the amount recoverable be likewise allocated,' so that the innocent spouse be compensated for one-half the damages within the limits of the policy. *Steigler, supra*, 384 A.2d at 402. Permitting recovery of more would necessitate reliance on the 'oneness' legal fiction of marital property which we rejected in determining that the parties here enjoy and assume several, not joint, contractual rights and obligations. Moreover, an award greater than one-half would allow the innocent spouse to recover in excess of that to which she would be entitled upon severance of the tenancy by the entirety, whether by divorce or other action of the parties." 291Md. 153-154, 433 A.2d 1135.
>
> . . . .
>
> . . . we believe the better rule is that an innocent coinsured spouse, who owns property as a tenant by the entirety, may recover one-half the amount of the property damage (not to exceed the policy limits) caused by the fire deliberately set by the other coinsured spouse.

*Lewis*, 432 N.W.2d at 335-37 (footnotes omitted) (some citations omitted).[12] We agree with the result reached in *Lewis* and conclude that in the event damages are awarded by the trial court, the amount should be limited to one-half of the property loss within policy limits.

The judgment of the trial court is reversed and this cause remanded for further proceedings as hereinabove set forth. Costs are assessed against the appellee, for which execution may issue if necessary.

_____
FARMER, J.

_____

_____

[12]*Lewis* mentions *Liggett* as the exception in allowing the innocent co-insured's recovery of the whole of the insurance proceeds, but concludes, as does this Court, that *Liggett's* ruling on the issue is limited on its facts. *See Lewis*, 432 N.W.2d at 337.

CRAWFORD, P.J., W.S. (Concurs)


_____

HIGHERS, J. (Concurs)